IN THE DISTRICT COURT OF GUAM

TERRITORY OF GUAM

UNITED STATES OF AMERICA,       ) Criminal Case No. 18-00010
                                )
                 Plaintiff,     )
                                )
        vs.                     )
                                )
JOHN D. WALKER,                 )
aka JON WALKER,                 )
MARVIN R. REED,                 )
KENNETH R. CROWE,               )
PHILLIP T. KAPP,                )
                                )
_____  Defendants.  )


TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE MICHAEL J. BORDALLO,
MAGISTRATE JUDGE
(Via telephone)
MAY 6, 2020; 9:00 A.M.
HAGATNA, GUAM


**Motion Hearing on an Amended Motion for Hearing to Address**          09:01:50AM
**Potential Conflict of Interest and a Motion for Protective**          09:01:54AM
**Order, Prevent Removal of Evidence, Schedule Inspection,**            09:01:58AM
**Prevent Harassment of Witnesses**                                     09:02:01AM


Proceedings recorded by *mechanical stenography*.

Veronica F. Flores, CSR-RPR
Official Court Reporter
520 W. Soledad Avenue
Hagatna, Guam 96910

APPEARANCES

Appearing on behalf of plaintiff:

**OFFICE OF THE UNITED STATES ATTORNEY**
**BY: STEPHEN LEON GUERRERO, AUSA** (via telephone)
**MARIE MILLER, SAUSA** (via telephone)
Suite 500, Sirena Plaza
108 Hernan Cortez Avenue
Hagatna, Guam 96910
(671) 472-7332

Appearing on behalf of Defendant Walker:

**LAW OFFICE OF JAMES M. MAHER**
**BY: JAMES M. MAHER, ESQ.** (via telephone)
238 Archbishop Flores Street
Suite 300, DNA Building
Hagatna, Guam 96910
(671) 477-7892

**BY: MACK K. MARTIN, ESQ.** (via telephone)
125 Park Avenue, 5th Floor
Oklahoma City, OK 73102

Appearing on behalf of Defendant Reed:

**LAW OFFICE OF PETER C. PEREZ**
**BY: PETER C. PEREZ, ESQ.** (via telephone)
238 Archbishop Flores Street
Suite 802, DNA Building
Hagatna, Guam 96910
(671) 475-5055

Appearing on behalf of Defendant Crowe:

**LAW OFFICE OF LUJAN & WOLFF**
**BY: DAVID J. LUJAN, ESQ.** (via telephone)
238 Archbishop Flores Street

**LAW OFFICE OF GREGORY NICOLAYSEN**
**BY: GREGORY NICOLAYSEN, ESQ.** (via telephone)
27240 Turnberry Lane, Suite 200
Valencia, CA 91355
(818) 970-7247

Appearing on behalf of Defendant Kapp:

**LAW OFFICE OF ANTHONY C. PEREZ**
**BY: ANTHONY C. PEREZ, ESQ.** (via telephone)
238 Archbishop Flores Street
Suite 802, DNA Building
Hagatna, Guam 96910
(671) 475-5055

**BY: EDWARD A. MCCONWELL, ESQ.,** (via telephone)
**LAURA L. MCCONWELL, ESQ.** (via telephone)
5201 Johnson Drive, Suite 300
Mission, KS 66205

Appearing on behalf of Defendant Hansen:

**LAW OFFICE OF EDWARD C. HAN**
**BY: EDWARD C. HAN, ESQ.** (via telephone)
378 Sara Street
Purple Heart Highway
Maite, GU 96910
(671)477-9219

Appearing on behalf of Defendant Rogers:

**LAW OFFICE OF GUMATAOTAO & POLE**
**BY: WILLIAM B. POLE, ESQ.** (via telephone)
Suite 301, San Ramon Building
115 San Ramon Street
Hagatna, GU 96910
(671)475-0200

ALSO PRESENT:

John Walker, Defendant (via telephone)

Marvin Reed, Defendant (via telephone)

Kenneth Crowe, Defendant (via telephone)

Phillip Kapp, Defendant (via telephone)

Viranousith Khamvongsa, IRS agent (via telephone)
--------------------------------------------------
I N D E X

Page

Court to take matters under advisement and
issue decision shortly                        38

|   |   |   |
|---|---|---|
| 1 | May 6, 2020; 9:01 a.m.; Hagatna, Guam | 09:00AM |
| 2 | * * * | 09:00AM |
| 3 | THE CLERK:  Your Honor, all the parties are | 09:01AM |
| 4 | present. | 09:01AM |
| 5 | THE COURT:  All right, go ahead and call the case | 09:01AM |
| 6 | then. | 09:01AM |
| 7 | THE CLERK:  Okay, Your Honor.  Come to order, the | 09:01AM |
| 8 | District Court of Guam is now in session, the Honorable | 09:01AM |
| 9 | Michael J. Bordallo presiding on Criminal Case 18-00010, *USA* | 09:01AM |
| 10 | *versus John D. Walker, Marvin R. Reed, Kenneth R. Crowe,* | 09:01AM |
| 11 | *Phillip T. Kapp, Randall Rogers, and Hansen Helicopters* on a | 09:01AM |
| 12 | Motion Hearing on an Amended Motion for Hearing to Address | 09:01AM |
| 13 | Potential Conflict of Interest and a Motion for Protective | 09:01AM |
| 14 | Order, Prevent Removal of Evidence, Schedule Inspection, | 09:01AM |
| 15 | Prevent Harassment of Witnesses. | 09:02AM |
| 16 | Counsels, please state your appearance, starting | 09:02AM |
| 17 | with the government.  And we'll go from Defendant 1 all the | 09:02AM |
| 18 | way down.  Thank you. | 09:02AM |
| 19 | MR. LEON GUERRERO:  Buenas and hafa adai, Your | 09:02AM |
| 20 | Honor, this is Assistant U.S. Attorney Stephen Leon Guerrero. | 09:02AM |
| 21 | Also present with me is IRS Agent Sith Khamvongsa.  Also | 09:02AM |
| 22 | present is co-counsel, Special Assistant U.S. Attorney Marie | 09:02AM |
| 23 | Miller. | 09:02AM |
| 24 | MS. MILLER:  Hafa adai, Your Honor. | 09:02AM |
| 25 | THE COURT:  Hafa adai. | 09:02AM |

```
1          MR. MARTIN:  Your Honor, this is Mack Martin.  I    09:02AM

2    represent John Walker.  I'm getting him on the other line.  I    09:02AM

3    had accidentally disconnected him, but he'll be on the phone    09:02AM

4    in just a moment.                                              09:02AM

5          THE COURT:  And is local Counsel, Jim Maher, also    09:02AM

6    on or is it just you, Mr. Martin?                              09:02AM

7          MR. MARTIN:  Mr. Maher is on.                          09:02AM

8          THE COURT:  Okay.  All right, thank you.               09:02AM

9          MR. PEREZ:  Good morning, Your Honor, Peter Perez    09:02AM

10    present with Mr. Reed by telephone.                           09:02AM

11          THE COURT:  Okay.  Thank you.                         09:03AM

12          MR. LUJAN:  Good morning, Your Honor, -- Lujan       09:03AM

13    and, you know, and also on the phone is Gregory Nicolaysen on    09:03AM

14    behalf of Rufus Crowe and Mr. Nicolaysen will be arguing on    09:03AM

15    behalf of Mr. Crowe.                                          09:03AM

16          MR. NICOLAYSEN:  Good morning, Your Honor, Greg      09:03AM

17    Nicolaysen here from Los Angeles.                             09:03AM

18          MR. POLE:  Attorney William Pole, Your Honor --      09:03AM

19    go ahead.                                                     09:03AM

20          THE COURT:  Go ahead, go ahead.                      09:03AM

21          MR. POLE:  William Pole, Your Honor, on behalf of    09:03AM

22    Randall Rogers.  He's in Georgia.                             09:03AM

23          THE COURT:  Okay.                                    09:03AM

24          MR. MCCONWELL:  Edward McConwell, Laura McConwell   09:03AM

25    on behalf of Phillip Kapp, and Mr. Perez is on the phone too.    09:03AM
```

*Criminal Case No. 18-00010, USA v. Walker, et al.*

```
 1              (Pause.)                                          09:03AM

 2              THE COURT:  All right.                            09:03AM

 3              MR. HAN:  This is Ed Han for Hansen Helicopters.  09:03AM

 4              THE COURT:  Okay, and Mr. Nicolaysen, on behalf   09:03AM

 5    of Mr. Lujan, has Mr. Nicolaysen filed his pro hac vice in  09:03AM

 6    this case already?                                          09:04AM

 7              MR. NICOLAYSEN:  Yes, Your Honor, it was done two 09:04AM

 8    years ago.                                                  09:04AM

 9              THE COURT:  Okay.  All right.  So he -- I haven't 09:04AM

10    seen but I saw -- all right.  Thank you.  All right.  Let's go 09:04AM

11    for the first matter before the Court is the amended motion 09:04AM

12    for a hearing to address potential conflicts and what I don't 09:04AM

13    need is I don't need a repeat of anything that's contained in 09:04AM

14    the briefs.                                                 09:04AM

15              So beginning with the government, is there        09:04AM

16    anything in addition to what's been filed that you wish the 09:04AM

17    Court to be aware of?                                       09:04AM

18              MR. LEON GUERRERO:  Yes, yes, Your Honor.  Thank  09:04AM

19    you.  Stephen Leon Guerrero.  So really, in addition to, you 09:04AM

20    know, the arguments that were raised in our filing, it has  09:04AM

21    come to our attention that there is in fact a joint defense 09:04AM

22    agreement amongst the defendants and that was something we  09:04AM

23    weren't aware of or sure of when we initially filed this    09:04AM

24    motion, and because we've been made aware of that, you know, 09:04AM

25    we're simply asking the Court to make sure that there's no, 09:05AM
```

1   you know, potential for conflict of interest in any way to be     09:05AM

2   able to conduct an in camera review of that joint defense         09:05AM

3   agreement to determine if there's any potential for conflict      09:05AM

4   of interest.  You know, the big concern, you know, that the       09:05AM

5   government has is, we have Defendant Hansen who wasn't a          09:05AM

6   defendant in the initial indictment, um, is a defendant now,     09:05AM

7   and our concern is, if Defendant Hansen is paying the legal       09:05AM

8   fees of its co-defendants, you know, there is a potential for    09:05AM

9   conflict of interest if one of these defendants chooses to       09:05AM

10  want to cooperate and assist the government against its          09:05AM

11  co-defendants but can't because Defendant Hansen is paying its   09:05AM

12  attorneys fees.                                                   09:05AM

13          So, you know, that is a conflict of interest that        09:05AM

14  the government is trying to avoid.  The other thing, too, is     09:05AM

15  you know, what we want to point out in addition is, you know,    09:06AM

16  we had attorney Martin who, you know, it's our position, was     09:06AM

17  representing Defendant Hansen and Defendant Walker at the same   09:06AM

18  time.  And so, you know, that was evident in the sense that      09:06AM

19  you know, now, you know, they have attorney Han who's now        09:06AM

20  representing Defendant Hansen.  But, you know, since the         09:06AM

21  indictment, you know, there's multiple layers of the potential  09:06AM

22  for conflict of interest to arise.                               09:06AM

23          At one point, attorney McConwell, and this was          09:06AM

24  noted in our filing ECF 416, you know, we have attorney         09:06AM

25  McConwell that sought to deregister aircraft with the FAA.      09:06AM

1  And what's important to note is these aircraft that he's 09:06AM

2  looking to deregister belong to subsidiaries of Defendant 09:06AM

3  Hansen, again, who at least at one time was being represented 09:07AM

4  by attorney Martin. 09:07AM

5          So, you know, we have that potential conflict of 09:07AM

6  interest where attorney McConwell, in essence, representing 09:07AM

7  these Defendant Hansen subsidiaries and trying to deregister 09:07AM

8  these aircraft with the FAA.  We also have Defendant Crowe and 09:07AM

9  Defendant Crowe either has a position and/or role with these 09:07AM

10 Vanuatu subsidiaries.  And the same thing with Defendant 09:07AM

11 Crowe, he sought to deregister aircraft with the FAA, again, 09:07AM

12 creating this potential layer of a conflict, not only with 09:07AM

13 himself, but again, attorney Martin and others. 09:07AM

14          So, you know, that -- you know, the big thing 09:07AM

15 with the government, Your Honor, bringing this motion is just 09:07AM

16 really having a hearing to ensure that, you know, we point out 09:07AM

17 the concerns that we have and, you know, the different 09:07AM

18 scenarios that we believe that there may be a potential 09:08AM

19 conflict of interest.  And, you know, ultimately, it will be 09:08AM

20 the Court to make that determination if a conflict or not even 09:08AM

21 just an actual conflict but the potential for a conflict 09:08AM

22 exists and that's merely what the government is just trying to 09:08AM

23 do, we have an obligation to bring it to the Court's attention 09:08AM

24 if we feel that there is a potential and that's what we did. 09:08AM

25 And so with those arguments, Your Honor, we submit, unless my 09:08AM

1    co-counsel, SAUSA Miller, has anything else she'd like to add.    09:08AM

2              MS. MILLER:  I do not.  I do not.  Thank you,    09:08AM

3    Your Honor.  Thank you, Stephen.    09:08AM

4              THE COURT:  All right.  Thank you.  Let me begin    09:08AM

5    with Mr. Walker's Counsel, Mr. Martin, you can go ahead and    09:08AM

6    address if you have addition to add other than what's been    09:08AM

7    filed?    09:08AM

8              MR. MARTIN:  Your Honor, I accidentally    09:08AM

9    disconnected myself, so when I picked up, Mr. Leon Guerrero    09:08AM

10   was talking about Hansen and attorney's fees being paid.    09:08AM

11   Anything before then, I didn't hear and I apologize.  I    09:09AM

12   accidentally disconnected, but let me just briefly say my    09:09AM

13   technology, Your Honor, is not that great.  Let me just --    09:09AM

14             THE COURT:  Well, let me just -- I guess, if I    09:09AM

15   can attempt to bring you up to speed, Counsel has just brought    09:09AM

16   up that there in fact exists a joint defense agreement and    09:09AM

17   then the obvious concern about the conflicts.  He referenced    09:09AM

18   Mr. McConwell may be representing subsidiaries of Hansen in    09:09AM

19   attempts at deregistration.  The Court has reviewed those    09:09AM

20   requests, the deregistrations that were filed as exhibits and    09:09AM

21   the conflicts that may be associated with that.  So that's    09:09AM

22   kind of where the government was.  Go ahead, you can then now    09:09AM

23   argue to the Court if you have anything you wish the Court to    09:09AM

24   be aware of other than what's been filed.    09:09AM

25             MR. MARTIN:  Your Honor, very briefly.  I    09:09AM

1   represent John Walker.  I don't represent Hansen, I don't      09:09AM
2   represent anyone else.  My loyalties are to John Walker.  He's  09:10AM
3   aware of that.  He's previously executed a waiver of conflict   09:10AM
4   of interest in this case as relation to all other defendants    09:10AM
5   and on behalf of Hansen, a waiver.  But there's -- I            09:10AM
6   understand -- I've been doing this for a long, long time.  I    09:10AM
7   understand what a conflict is.  And if the government wants to   09:10AM
8   make an offer to us for us to cooperate against them, I'm sure  09:10AM
9   willing to hear them.  I don't think Hansen is going to impact  09:10AM
10  my loyalty or duties to John Walker in any way shape or form    09:10AM
11  if that's a concern of theirs.  I will advise the Court that    09:10AM
12  we all do have a common defense.  Our common defense is we      09:10AM
13  haven't done anything wrong, but that doesn't create a          09:10AM
14  conflict of interest.  I think the issues are clearly set out   09:10AM
15  in the briefs filed by all the parties and I would stand on     09:10AM
16  that, Judge.                                                    09:10AM
17          THE COURT:  All right.  Thank you, Mr. Martin.          09:10AM
18  Let me -- go ahead, I'm sorry.                                  09:10AM
19          (Pause.)                                                09:11AM
20          THE COURT:  We may have lost Mr. Martin again.          09:11AM
21          MR. MARTIN:  No, I'm here.  I'm here, Judge.  Can       09:11AM
22  you hear me?                                                    09:11AM
23          THE COURT:  Yes, okay.  Is that it, Mr. Martin?         09:11AM
24          MR. MARTIN:  That's it, and I think my Counsel --       09:11AM
25  my client's on the phone, if you need a waiver from him, he     09:11AM

1   can orally do it and if we need to do another one, we're happy          09:11AM

2   to do that.          09:11AM

3        THE COURT:  All right.  Let me just move up the          09:11AM

4   line.  Mr. Perez, anything on behalf of Mr. Reed?          09:11AM

5        MR. PEREZ:  Just briefly, Your Honor.  First, we          09:11AM

6   join in the opposition filed by co-defendants in Document 415          09:11AM

7   and 417.  I would just reiterate that my loyalty as Counsel is          09:11AM

8   to Defendant Reed only.  I would also point out that Mr. Reed          09:11AM

9   also signed a waiver which was submitted to the Court          09:11AM

10  previously.          09:11AM

11       I would just also submit that the government has          09:11AM

12  made no threshold showing of any conflict and I would also          09:11AM

13  just point out that the issue regarding the conflict based          09:11AM

14  upon payment of fees was raised previously by the government          09:11AM

15  addressed by this Court with Judge Manibusan and was denied          09:11AM

16  back then and this is the same issue that's being raised again          09:12AM

17  and I have nothing further to add other than that.          09:12AM

18       THE COURT:  All right.  Mr. Pole, anything to add          09:12AM

19  on behalf of Mr. Rogers?          09:12AM

20       MR. POLE:  Your Honor, I would just add that of          09:12AM

21  course, again, my loyalty is to Mr. Rogers and he's only on          09:12AM

22  one count.  So that even if there was a conflict for the other          09:12AM

23  defendants, which we don't see, it wouldn't be imputed to my          09:12AM

24  client, Your Honor.          09:12AM

25       THE COURT:  All right.  On behalf of Mr. Kapp,          09:12AM

Case 1:18-cr-00010    Document 472    Filed 05/11/20    Page 11 of 38

1    Mr. McConwell or Tony?                                              09:12AM

2              MR. MCCONWELL:  This is Mr. McConwell, Your              09:12AM

3    Honor.  I join in that.  My loyalty is to Mr. Kapp.  He's also     09:12AM

4    waived any potential conflict.  I do not believe there's a        09:12AM

5    conflict with regard to the administrative matters we've been     09:12AM

6    dealing with, with regard to the FAA enforcement case or the      09:12AM

7    letter, or e-mail that you got from me to another Counsel in      09:12AM

8    this case urging them to go ahead and allow deregistration.  I    09:13AM

9    might point out to you they have blocked every deregistration     09:13AM

10   of aircraft in the registry right now and I think they have       09:13AM

11   something like 58 hold orders, so they're trying to block         09:13AM

12   deregistration by Hansen of the right to deregister their         09:13AM

13   aircraft.  But my client has no objection to the network that     09:13AM

14   I've done for the Vanuatu corporations and has executed the       09:13AM

15   waiver.                                                           09:13AM

16             THE COURT:  All right.  Thank you, Mr. McConwell.       09:13AM

17   On behalf of Mr. Crowe, Mr. Nicolaysen?                           09:13AM

18             MR. NICOLAYSEN:  Yes, thank you, Your Honor, Greg       09:13AM

19   Nicolaysen from Los Angeles speaking on behalf of Mr. Crowe       09:13AM

20   together with my co-Counsel David Lujan.  Your Honor, I ask       09:13AM

21   the Court to take note as our papers mention of the waiver of     09:13AM

22   conflicts filed on February 22nd of 2019, PACER                   09:13AM

23   Document 2-0-4.  That waiver resolves any issue of any            09:14AM

24   potential conflict and there certainly was no actual conflict     09:14AM

25   that was being raised by the government in its initial filing     09:14AM

*Criminal Case No. 18-00010, USA v. Walker, et al.*

| | |
|---|---|
| 1 | back in 2018.  And so looking at February of 2019 forward in | 09:14AM |
| 2 | time up to the present time, the government has not addressed | 09:14AM |
| 3 | any circumstance that would suggest that during the period | 09:14AM |
| 4 | subsequent to the filing of the conflict waivers, which Judge | 09:14AM |
| 5 | Manibusan accepted, there has been anything to raise divided | 09:14AM |
| 6 | loyalties or any other type of conflict in regard to the | 09:14AM |
| 7 | representation of Mr. Crowe.  And in my view, that this is | 09:14AM |
| 8 | simply, as our papers argue, an effort to delay the trial. | 09:14AM |
| 9 | In regard to the filing of the amended motion, | 09:14AM |
| 10 | it's all in our papers, I won't repeat the argument here, but | 09:14AM |
| 11 | there is certainly no basis for any type of conflict inquiry | 09:15AM |
| 12 | or even for the filing of a supplemental waiver.  There is no | 09:15AM |
| 13 | need for any additional waiver in regard to Mr. Crowe. | 09:15AM |
| 14 | THE COURT:  All right.  Thank you, | 09:15AM |
| 15 | Mr. Nicolaysen.  I apologize for butchering your name but I | 09:15AM |
| 16 | think I got it now. | 09:15AM |
| 17 | MR. NICOLAYSEN:  No, it's fine. | 09:15AM |
| 18 | THE COURT:  Mr. Han, on behalf of Hansen | 09:15AM |
| 19 | Helicopters, anything -- because you're -- I guess the amended | 09:15AM |
| 20 | complaint that is now Hansen formally as a defendant. | 09:15AM |
| 21 | MR. HAN:  Yes, Your Honor.  Um, nothing else to | 09:15AM |
| 22 | add except the fact that I'd be loyal to the Hansen | 09:15AM |
| 23 | Helicopters, the corporation. | 09:15AM |
| 24 | THE COURT:  All right.  Thank you. | 09:15AM |
| 25 | MR. LEON GUERRERO:  Your Honor, this is AUSA Leon | 09:15AM |

1    Guerrero, just a brief rebuttal.                                    09:15AM

2              THE COURT:  Okay.  Go ahead.                             09:15AM

3              MR. LEON GUERRERO:  Now, I would say that the,          09:15AM

4    you know, the circumstances have changed and really those         09:15AM

5    waivers that were previously submitted to the Court are           09:15AM

6    outdated because at the time, Defendant Hansen was not a          09:16AM

7    co-defendant in the case.  So I would say that the                09:16AM

8    circumstances have changed and really those -- the initial        09:16AM

9    waivers that were provided to the Court really are no longer      09:16AM

10   pertinent and they're outdated, given the current superseding     09:16AM

11   indictment.                                                        09:16AM

12             THE COURT:  All right.                                  09:16AM

13             MR. NICOLAYSEN:  Your Honor, on behalf of               09:16AM

14   Mr. Crowe, I'd like to respond since it was in response to my     09:16AM

15   comment.  The government has an obligation to make a prima        09:16AM

16   facie showing that there is a reason to be concerned about a      09:16AM

17   serious potential for conflict or an actual conflict.  The        09:16AM

18   mere fact that the corporate entity was not a defendant at the    09:16AM

19   time the original conflict waivers were filed in February 2019    09:16AM

20   and we now have the corporate defendant in this case, that is     09:16AM

21   not a sufficient change of circumstance to suggest that there     09:16AM

22   are divided loyalties that would warrant further inquiry.  And    09:17AM

23   the government needs to demonstrate that there is some basis      09:17AM

24   for divided loyalties sufficient to conduct further inquiry in    09:17AM

25   camera or otherwise.  If the Court wishes to conduct further      09:17AM

1    inquiry, I would recommend that that be done outside the          09:17AM

2    government's presence and the Court can take oral waivers by       09:17AM

3    phone at this hearing in an under-seal proceeding and we can       09:17AM

4    have it resolved now.  I don't think it's necessary, but I         09:17AM

5    think the defendants would be prepared to do that if the Court     09:17AM

6    feels that the need has arisen for a supplemental waiver.          09:17AM

7           THE COURT:  No, the Court has reviewed the                  09:17AM

8    defendants' briefs and also the arguments with respect to the      09:17AM

9    nature of the initial investigation and the government's           09:17AM

10   awareness certainly since 2015 of the involvement of -- well,      09:17AM

11   the newest defendant, Hansen Helicopters, and that the            09:17AM

12   investigation really was -- was -- was geared towards them         09:17AM

13   from the beginning.                                                09:18AM

14          The Court, I think, just needs to remind the                09:18AM

15   lawyers to, you know, I'm sure the lawyers are aware of their      09:18AM

16   duty under Rule 1.8 and just make sure that you guys remain in     09:18AM

17   compliance with the rules and everybody's affirmatively stated     09:18AM

18   their loyalty to their specific client -- the insistence of a      09:18AM

19   defense agreement and whether or not compensation may or may       09:18AM

20   not be coming from -- from -- from persons other than their        09:18AM

21   client.  So let's just make sure we remain cognizant of that       09:18AM

22   and remain in compliance with that as well as 1.6 dealing with     09:18AM

23   confidentiality with respect to your individual client.  Okay?     09:18AM

24   I don't think the Court needs to be concerned with that.  The      09:18AM

25   second motion before the Court is -- so the Court will take        09:18AM

1    that matter under advisement and will issue an order as soon    09:18AM

2    as possible.    09:18AM

3            The other motion before the Court is motion for    09:19AM

4    protective order by the government to schedule an inspection    09:19AM

5    and to prevent harassment of the witnesses.  Again, the Court    09:19AM

6    has reviewed all the documents that have been filed    09:19AM

7    previously.  Mr. Leon Guerrero or Ms. Martin [sic], is there    09:19AM

8    anything the government wishes to add with respect to that    09:19AM

9    motion?    09:19AM

10            MS. MILLER:  Yes, Your Honor, this is Marie    09:19AM

11    Miller, can you hear me?    09:19AM

12            THE COURT:  I'm sorry, Ms. Miller, I apologize.    09:19AM

13            MS. MILLER:  Oh, that's okay.  Can you hear me    09:19AM

14    okay?    09:19AM

15            MR. MARTIN:  Your Honor, may I interject    09:19AM

16    something first?    09:19AM

17            THE COURT:  And who is this?    09:19AM

18            MR. MARTIN:  This is Mr. Martin, Your Honor.  I    09:19AM

19    represent Mr. Walker.  I had a suggestion about this motion if    09:19AM

20    I might interject and then if you want to proceed, that's    09:19AM

21    fine.    09:19AM

22            THE COURT:  Go ahead.    09:19AM

23            MR. MARTIN:  That the government has also filed,    09:19AM

24    issued 62 subpoenas for the production of these same identical    09:19AM

25    helicopters addressing almost the same issues, and rather than    09:19AM

being repetitive, I was going to suggest we might set both

arguments for the same time at a later date, because the same

issues will virtually be addressed in those arguments that are

going to be addressed here.  And if the Court wants to

proceed, that's fine, but I wanted to make that suggestion.

THE COURT:  So Ms. Miller, what is the briefing

period -- I assume, Mr. Martin, you're referring to a motion

to quash the subpoenas then, there's a motion to quash that's

pending; is that correct?

MR. MARTIN:  That's correct, Your Honor.

THE COURT:  Does anybody know what the briefing

schedule is for that?  I don't know it off hand.

MS. MILLER:  Your Honor, there isn't anything

scheduled yet in terms of hearing that motion and the

government does not concede that the Rule 16 motion is the

same as the Rule 17 motion.  Those are two distinct procedural

processes and it is inappropriate to say that they should be

argued and heard at the same time.  The motion for a

protective order is a critical motion that should be heard and

ruled on by the Court as soon as possible and since we have

this hearing time and no one has before now recommended that

we move it and combine it with the Rule 17 motion and I

suggest we do go forward, Your Honor.

THE COURT:  All right.  Go ahead, Ms. Miller,

then.  Mr. Martin, we'll hear the argument and go from there.

1    MS. MILLER:  Thank you, Your Honor.  So I know          09:21AM

2  Your Honor does not want to hear anything that has already   09:21AM

3  been previously filed.  I will however bring something to the  09:21AM

4  Court's attention that the Court may not be fully aware of:    09:21AM

5          Number one, the FAA has tried to inspect these        09:21AM

6  helicopters 29 times.  There are 29 letters that have gone    09:21AM

7  from the FAA to the defendants seeking repeatedly to inspect  09:21AM

8  these helicopters to ensure that they are safe and air-worthy. 09:21AM

9          One of those requests was on Helicopter N No.         09:21AM

10  9068-F, as in Frank.  And that particular aircraft was one    09:22AM

11  that crashed and killed a pilot on September 3rd of 2015.  And 09:22AM

12  the defendants continue to refuse to produce the helicopters  09:22AM

13  for inspection by the FAA for years, making numerous excuses  09:22AM

14  similar to the excuses that they made in response to the      09:22AM

15  government's motion here, that it would be too difficult to   09:22AM

16  pull the helicopters in, that it is too challenging, that is  09:22AM

17  it would cost them too much money, and our response is, too   09:22AM

18  bad.  The defendants actually are the ones who sought the     09:22AM

19  registration of all of these helicopters by the FAA.  And when 09:22AM

20  they sought that registration by the FAA, they certified under 09:22AM

21  penalty of perjury that they were seeking the registration to 09:22AM

22  comply with all of the FAA rules and conditions, and since    09:23AM

23  then, they have done anything but comply with those rules and 09:23AM

24  conditions.                                                   09:23AM

25          In this particular case, Your Honor, there has       09:23AM

1    been a plea agreement entered into by an FAA inspector who          09:23AM

2    admitted to his role in the honest services fraud and his role      09:23AM

3    in issuing 30 airworthiness certificates, 3-0, to these             09:23AM

4    defendants, without having actually conducted a proper              09:23AM

5    inspection of either the aircraft or the legitimate paperwork       09:23AM

6    tied to the aircraft.                                               09:23AM

7            Another thing that Your Honor hasn't seen in the            09:23AM

8    pleadings is that there have been nine deaths associated with       09:23AM

9    Hansen-owned helicopters, six serious injuries associated with      09:23AM

10   Hansen-owned and -operated helicopters.  We know that the           09:23AM

11   defendants have, "deregistered" and "reregistered" aircraft in      09:24AM

12   the Philippines before.                                             09:24AM

13           For example, Your Honor, one of the aircraft,               09:24AM

14   N369TG, Mr. Crowe said that Echo Air owned that aircraft.           09:24AM

15   Echo Air is one of the numerous Vanuatu corporations created        09:24AM

16   by the defendants for, according to them, insurance purposes.       09:24AM

17   And despite the fact that Mr. Crowe indicated to the FAA that       09:24AM

18   that aircraft is owned by Hansen outright and, therefore,           09:24AM

19   Hansen has the right to deregister it and to reregister it in       09:24AM

20   the Philippines, the FAA also has certification from Venezuela      09:24AM

21   that that identical aircraft is registered there by a third         09:24AM

22   party.  Every single helicopter was registered with the FAA.       09:24AM

23   And another example is N444GJ.  Every single request for            09:25AM

24   paperwork regarding that aircraft, even though it was               09:25AM

25   allegedly a Vanuatu-owned aircraft, the defendants asked that       09:25AM

1   all that paperwork be sent to Guam and this is something that          09:25AM

2   they've done over and over and over again.          09:25AM

3          We have a letter that we produced to you, Your          09:25AM

4   Honor, from the Philippines, indicating -- not only from the          09:25AM

5   Philippines by the way, Your Honor, from Vanuatu, from          09:25AM

6   Palawan, confirming that the aircraft that the defendants          09:25AM

7   ostensively deregistered here to reregister there were never          09:25AM

8   in fact registered or their registrations were allowed to fail          09:25AM

9   in the case of the Philippines.          09:25AM

10          I submitted to the Court yesterday an exhibit          09:25AM

11   just to show you and to provide you with an example of just          09:26AM

12   how outrageous the defendants' conduct is in relation to this          09:26AM

13   particular case.  The defendants submitted an exhibit in          09:26AM

14   support of their motion to dismiss that the defendants          09:26AM

15   represented was an exhibit relating to aircraft N831FG.  But          09:26AM

16   what the defendants did was they only submitted to the Court          09:26AM

17   part of the file on N831FG.  They submitted an export letter          09:26AM

18   requesting deregistration of that aircraft.  They submitted a          09:26AM

19   deregistration confirmation.  They submitted a letter from the          09:26AM

20   FAA registering the aircraft after the export request and then          09:26AM

21   the registration from the FAA.  What they did not submit to          09:26AM

22   this Court was a statement of the whereabouts of that aircraft          09:26AM

23   showing that that aircraft never left Guam, despite the          09:27AM

24   representations to the government that it was being exported.          09:27AM

25   What they didn't produce to the Court was a letter from          09:27AM

1  Mr. Walker requesting the FAA registration after that aircraft    09:27AM

2  was supposedly exported but we know it was never exported, nor    09:27AM

3  did they produce to the Court another letter to the FAA,    09:27AM

4  indicating that they were waiting for Vanuatu to confirm that    09:27AM

5  the helicopter was never registered there and then they also    09:27AM

6  didn't produce to the Court the Vanuatu confirmation that the    09:27AM

7  aircraft was never registered there.  We have letters from the    09:27AM

8  defendants going to the FAA over the last ten years, talking    09:27AM

9  about aircraft being exported, then saying, no, we never    09:27AM

10  exported this aircraft, and meanwhile, the aircraft is in    09:27AM

11  registration limbo, but we know, based on the information we    09:28AM

12  received from the defendants, that these helicopters are    09:28AM

13  making them millions of dollars a year, despite the fact that    09:28AM

14  they have not been properly inspected.    09:28AM

15        Finally, Your Honor, they want to ostensively    09:28AM

16  remove the aircraft to the Philippines but we also produced a    09:28AM

17  document for you from the Philippines referring to the    09:28AM

18  defendants' utter defiance of civil aviation law and disregard    09:28AM

19  of their responsibilities to the Philippines equivalent of the    09:28AM

20  FAA as they have here.    09:28AM

21        Your Honor, you have the authority under Rule 16    09:28AM

22  of the Federal Rules of Criminal Procedure to enter a    09:28AM

23  protective order to allow the inspection of these helicopters    09:28AM

24  and also to assure that they are not deregistered and not    09:28AM

25  moved outside of the jurisdiction of the United States.  When    09:28AM

1    you consider what has happened in this case and how the           09:29AM

2    defendants have repeatedly, repeatedly lied to the FAA and         09:29AM

3    misrepresented and they are still using these helicopters to       09:29AM

4    transport pilots and mechanics, putting all these individuals      09:29AM

5    in danger, we ask this Court to exercise your jurisdiction         09:29AM

6    under the rule and under the case law that we cited to grant       09:29AM

7    the motion for a protective order, to require the defendants       09:29AM

8    to finally bring these helicopters back to Guam for a proper       09:29AM

9    inspection by the government and to make them available to the     09:29AM

10   government.  And I don't wish to add anything else other than      09:29AM

11   what was already previously filed with the Court regarding the     09:29AM

12   witness tampering, any other issues.  Thank you, Your Honor.       09:29AM

13            THE COURT:  All right.  Let's -- Mr. Martin, on           09:29AM

14   behalf of Mr. Walker?                                              09:29AM

15            MR. MARTIN:  Yes, Your Honor, thank you very              09:30AM

16   much.  Your Honor, I'm not sure that the government               09:30AM

17   understands the purpose of Rule 16 discovery.  They asked for      09:30AM

18   discovery in this criminal case.  They don't represent the        09:30AM

19   Department of Transportation, they don't represent the FAA,        09:30AM

20   they don't represent the Federal Bureau of Investigation, they     09:30AM

21   don't represent Mr. Cislo, who's their star witness that they      09:30AM

22   talk about in this case.  Their one -- their alleged purpose       09:30AM

23   for this is for safety and airworthiness and they talk about       09:30AM

24   29 letters that have been sent ten years ago before I was even     09:30AM

25   involved in this case.  They admit they sent me one letter         09:30AM

1   that was attached to my motion.  I believe it was                                     09:30AM

2   December 12th saying, "Please tell us when we can inspect                              09:30AM

3   these helicopters" and I responded to the letter, I asked them                        09:30AM

4   to tell me what authority they had to do that.  I said if you                         09:30AM

5   got a problem with it, we'll take it up with Judge Gatewood or                        09:30AM

6   call me on the phone.  Neither one of those occurred.  They                           09:31AM

7   didn't call me, we didn't take it up with Judge Gatewood.  I                          09:31AM

8   figured they realized that they didn't have the authority to                          09:31AM

9   do that, so we went on.                                                               09:31AM

10          Secondly, they talk about the case law in support                             09:31AM

11  of their motion for protective order.  They cited no case law,                        09:31AM

12  Your Honor.  Rule 16 doesn't -- the way I read the rule,                              09:31AM

13  doesn't give the government the authority to come in and                              09:31AM

14  inspect evidence that -- for materials that -- in a case,                             09:31AM

15  unless we're going to use it and I, in my motion said, we're                          09:31AM

16  not going to produce any helicopters, we're not going to use                          09:31AM

17  any helicopters at trial so we shouldn't -- we shouldn't                              09:31AM

18  produce it.                                                                           09:31AM

19          Thirdly, Your Honor, the thing that offends me                                09:31AM

20  the most, and I use that word very lightly, is the personal                           09:31AM

21  attacks on lawyers.  The government has misrepresented in                             09:31AM

22  their motions things that my co-Counsel have been involved in,                        09:31AM

23  in this case.  In particular, in reference to Mr. Cislo, they                         09:32AM

24  make blatant allegations that Mr. McConwell confronted and                            09:32AM

25  accosted Mr. Cislo, which did not occur.  The government                              09:32AM

*Criminal Case No. 18-00010, USA v. Walker, et al.*

1  finally in January provided to us a 302 that's been identified          09:32AM
2  as FBI Hansen Document No. 046383, where during a proffer               09:32AM
3  session, the government alleged that Mr. McConwell confronted           09:32AM
4  him inside his hangar.  Mr. Cislo, and I'm reading from the            09:32AM
5  FBI 302 itself now, says "On Saturday, July 14th, a male               09:32AM
6  individual initiated contact with Cislo outside, outside of            09:32AM
7  his private hangar."  I made representations to the Court, as          09:32AM
8  an officer of the Court, quite honestly, what occurred by mere         09:32AM
9  happenstance on July 14th, and for them to make some type of           09:33AM
10 outrageous allegations that he tried to talk to him and he             09:33AM
11 tried to confront him about the case, he didn't intimidate him         09:33AM
12 at all, Your Honor.  Mr. Cislo doesn't say that.  Mr. Cislo            09:33AM
13 says -- even mentions that Mr. McConwell advised him that he           09:33AM
14 attempted to contact Cislo's attorney, they did not receive a          09:33AM
15 reply, consistent with exactly what I put in the motion, Your          09:33AM
16 Honor.  No Counsel in this case has done anything                      09:33AM
17 inappropriate.  And I find it kind of offensive that the               09:33AM
18 government would allege that there's something done                     09:33AM
19 inappropriate by any Counsel.  There's no basis for a                  09:33AM
20 protective order.  We all know the rules of ethics in this             09:33AM
21 case just like we know the rules relating to a conflict of             09:33AM
22 interest.  I ask the Court to deny the government's motion,            09:33AM
23 Your Honor.                                                            09:33AM
24          THE COURT:  All right.  Thank you, Mr. Martin.               09:33AM
25 Mr. Nicolaysen, anything to add?                                       09:33AM

*Criminal Case No. 18-00010, USA v. Walker, et al.*

1          MR. NICOLAYSEN:  Yes, Your Honor.  Thank you.          09:33AM

2    Rule 16 is a very narrow and specific rule in criminal          09:34AM

3    proceedings.  It deals with discovery by both sides.  The          09:34AM

4    issuance of protective orders provide restrictions under          09:34AM

5    Rule 16 that focus on the production of information by the          09:34AM

6    government typically by which parameters are being established          09:34AM

7    regarding the use of such evidence by the parties and we have          09:34AM

8    these protective orders in gang cases, identity theft cases,          09:34AM

9    etc., which is all about regulating how evidence is going to          09:34AM

10   be managed and used by the parties.          09:34AM

11          When the government seeks a protective order with          09:34AM

12   respect to the defense, that protective order under Rule 16          09:34AM

13   must be tailored to defense evidence.  That's not what's          09:34AM

14   happening here.  I'll give an example.  If the defendants          09:34AM

15   designated as a trial exhibit, a particular FAA-approved part          09:34AM

16   that was used on the helicopters during the time period of the          09:35AM

17   indictment, 2012 up to May 2018 when the first indictment was          09:35AM

18   filed, and we are going to be having testimony at trial          09:35AM

19   regarding that part, part of our presentation regarding          09:35AM

20   helicopters, then the Court would be well within its rights          09:35AM

21   and the government likewise, to direct the defense to make          09:35AM

22   that part available for inspection because that part is now          09:35AM

23   being designated by the defense as a trial exhibit.  Now          09:35AM

24   that's not happening -- the defense is not going to be          09:35AM

25   designating helicopters as defense exhibits.  That's just not          09:35AM

```
1   going to happen.  And therefore, the helicopters, which are      09:35AM
2   the subject of this motion, do not fall within the purview of     09:35AM
3   Rule 16.  They are not reciprocal discovery from the defense      09:35AM
4   to the government and the Court cannot issue any protective       09:35AM
5   orders with regard to those helicopters because those            09:36AM
6   helicopters simply don't fall within the parameters of Rule 16   09:36AM
7   and the government has made it clear in its filings, and as      09:36AM
8   recently as yesterday in Document 460, that their motion for     09:36AM
9   protective order is being brought under Rule 16.  It's           09:36AM
10  referred to as, "the government's Rule 16 motion."  So          09:36AM
11  therefore, the request by the government for (background        09:36AM
12  noise) to inspect the helicopters, order directing Hansen not   09:36AM
13  to transfer these helicopters as part of some sort of a         09:36AM
14  protective order, all of that has to be justified within the   09:36AM
15  very narrow and specific criteria of Rule 16, and because the  09:36AM
16  helicopters don't fall within Rule 16, they are not reciprocal 09:36AM
17  discovery, they are not going to be trial exhibits, this       09:36AM
18  Court, and I say this with respect, has no authority to order  09:36AM
19  any inspection.  And what the government is doing, is arguing   09:36AM
20  its case as if it were before an administrative body.  Marie   09:37AM
21  Miller is from the Department of Transportation, she's well    09:37AM
22  versed in FAA administrative procedures and the arguments that 09:37AM
23  she has presented here, which pertain to which she considers   09:37AM
24  safety issues, that there have been numerous requests to       09:37AM
25  inspect, that in her judgment have been ignored, and so on all 09:37AM
```

1   of that, goes to the issue of the FAA and the regulatory

2   agency having the authority to suspend or revoke

3   registrations, suspend or revoke airworthiness certificates.

4   That's the power of a regulatory agency, same thing with the

5   FDA over a drug company, the ACF over a gun manufacturer and

6   so on.  The arguments presented by Ms. Miller are suited for

7   the administrative environment where Hansen or whoever would

8   be, you know, deemed the appropriate owner of the helicopters,

9   would be subject to some administrative sanction for failing

10  to satisfy the safety and other obligations including making

11  the helicopters available for inspection.  That's an

12  administrative issue.  That has nothing at all to do with the

13  criminal proceeding or the narrow criteria under Rule 16.  And

14  I should emphasize that these helicopters, the vast majority

15  of the ones that's listed in the superseding indictment, which

16  for round numbers -- let's just use the number sixty, the vast

17  majority of these helicopters have valid registrations and

18  valid airworthiness certificates.  In fact, registrations have

19  three-year time tables and if Your Honor goes to www.faa.gov

20  and you have the superseding indictment in front of Your Honor

21  that has the table and all of these N numbers of the sixty

22  helicopters and you just start typing these N numbers into the

23  search engine on the home page, you'll get the profile of the

24  helicopters and you will see that the vast majority of them

25  have valid registrations.  Well, in fact, valid registrations

1    that expire either this year, 2021, even 2022.  That means the

2    FAA has been renewing these registrations during the period of

3    the investigation of this case which goes back at least to

4    2015 and earlier, and during the prosecution of this case.

5             So when the government complains, as it does,

6    that the helicopters are unsafe, and that we have refused

7    inspections, those administrative arguments should be directed

8    to the FAA as part of a claim that maybe the registrations

9    should not have been renewed, maybe they should be suspended

10   or revoked.  But this is a motion under Rule 16 and none of

11   the arguments the government has presented in its papers or

12   here today orally have any relevance whatsoever to Rule 16.

13            Let me just close by speaking about the

14   chronology of the superseding indictment.  If Your Honor goes

15   through the superseding indictment with an eye to the time

16   periods of the different counts, and if the Court please, I'll

17   be glad to do it, I have yellow highlighted it so I could

18   recite all the paragraphs in the superseding indictment.  Your

19   Honor will see that the government has consistently framed the

20   chronology of this prosecution from year 2012 up through May

21   of 2018, which is the doorstep of the filing of the initial

22   indictment, which was filed on May 31, 2018.

23            The superseding indictment, which was filed in

24   December 2019, a year and a half later, has one substantive

25   count that has to do with registrations that they claim was,

you know, improperly done on June 10th of 2018, a couple of

weeks after the first indictment.  But other than that one

ministerial charge, the entire superseding indictment is based

on the same chronology as the original indictment, which

doesn't go beyond May of 2018, and of course we are now in May

of 2020, two years later.

So the government cannot properly argue that

there is anything about the current helicopters that are

flying that has any relevance to the charges in the

indictment.  There is no allegation of continuity of

misconduct, or that the charged conspiracy are ongoing

conspiracies.  It'd be very different in a RICO case.  We've

all seen RICO cases where, let's just use a gang or a mafia

family where the defendants are on trial as members of a RICO

enterprise that is still in existence through the ongoing

prosecution and all the way up through a trial.  And so when

the mob family bosses in New York are on trial for being a

member of -- you know, being a leader of the Gambino family,

while they're in trial and while the prosecution is ongoing,

the RICO enterprise is considered to be still active.  And so

it's still ongoing criminal activities.  That's one of the key

centers between RICO and conspiracy.  Conspiracy, as we see in

this case, has bookends; it has a beginning and an end.  And

it's critical to recognize that the government is seeking to

have Court orders issued for inspections that the Court is not

1   authorized to issue, but the government is misunderstanding          09:42AM

2   that today's helicopters have nothing to do with the time           09:42AM

3   frame of the charge, because there's no allegation of any           09:42AM

4   continuity of misconduct, that there's any crime being              09:42AM

5   committed in 2020 that is relevant to the charge in this case,       09:42AM

6   unless the government is planning to supersede.  And if they         09:43AM

7   are, I ask the government through Your Honor, tell us now so         09:43AM

8   that we understand that; otherwise, based on chronology alone,       09:43AM

9   the concept of inspection is completely irrelevant because of       09:43AM

10  the two-year lapse between May of 2018 when the indictment          09:43AM

11  charges them and May of 2020, which is where we are today.          09:43AM

12  Those are my arguments to Your Honor and I would ask that the       09:43AM

13  government's motion be denied.                                       09:43AM

14            THE COURT:  All right.  Mr. Perez or                       09:43AM

15  Mr. McConwell on behalf of Defendant Kapp, anything to add?         09:43AM

16            MR. PEREZ:  Your Honor, I join in the opposition          09:43AM

17  of 422, 424, 428 and 434 and we rest on those as well as the       09:43AM

18  oral arguments presented by Mr. Martin and Mr. Nicolaysen.         09:43AM

19            MR. MCCONWELL:  This is Edward McConwell, Your            09:43AM

20  Honor, if I could respond a little bit here.  I could respond       09:43AM

21  to everything that Ms. Miller said and believe me, she's only       09:43AM

22  told you a fraction of the story in this matter.  There is          09:44AM

23  issues that she just brushed over and not given you the whole       09:44AM

24  story.                                                               09:44AM

25            One example you may not be aware of, but there's          09:44AM

1    a motion to dismiss on lack of jurisdiction that's pending          09:44AM

2    right now, it's been filed before the Court dealing with the        09:44AM

3    validity or invalidity of the airworthiness cert -- or the          09:44AM

4    registration certificates themselves.                               09:44AM

5              MR. MILLER:  Your Honor, I'm sorry to interrupt           09:44AM

6    but I'm going to object to Mr. McConwell arguing anything           09:44AM

7    relating to the motion to dismiss.  I didn't ignore it.  We're      09:44AM

8    not here to argue it.                                               09:44AM

9              THE COURT:  All right.                                    09:44AM

10             MR. MCCONWELL:  I'm bringing the matter to the            09:44AM

11   Court's attention.  I wasn't going to argue it, but I do want       09:44AM

12   to give one example of something she did bring up that is very      09:44AM

13   important in this case.  She highlights 9068 Fox Trot.  Now,        09:44AM

14   that's an aircraft that had an accident in September of 2015        09:44AM

15   and the Court -- the FAA was aware as of that time and              09:45AM

16   actually back in April of 2015 of an issue with regard to the      09:45AM

17   validity or invalidity to the aircraft registrations.  They        09:45AM

18   acknowledged in their search warrant affidavit with regard to      09:45AM

19   the search warrant that was issued from Guam by Judge              09:45AM

20   Manibusan that 9068 Fox Trot was registered in the Philippines     09:45AM

21   and because of that, and because of international law, that        09:45AM

22   was an invalid registration, and at that point, absolutely        09:45AM

23   knew they did not have jurisdiction over that aircraft, yet        09:45AM

24   they plowed ahead and ignored the fact they didn't have           09:45AM

25   jurisdiction with regard to that aircraft and the                  09:45AM

investigation that ensued from that, but it goes to the entire

line of Vanuatu corporations.  They were totally aware of the

existence of them, the number and that they were foreign

corporations.  That is implications that we'll be dealing with

later.  I'm not going to go through everything she said.

There is a different story.  There's more evidence that would

be -- would neutralize the thing that she said and we could

explain it to you, but it would take too long to do that.

But I do want to go back to the Mr. Cislo thing

at the airport.  Mr. Cislo did not tell the truth to the FBI

agents and that was an accidental meeting that occurred.  We

had no idea that he was going to even be there, didn't even

knew he was.  But for the way that has been misrepresented to

the Court is very offensive and Mr. Martin's already spoke on

my behalf and that's all I'm going to say about that, but I

join in the pleadings that have been filed in this matter and

ask that the motion for protective order be denied.

And I do have my question for you, my

understanding, and I've been doing this for over 50 years,

that a lawyer has the ability to be able to interview

witnesses that are identified by the government or the

plaintiff or the adverse party.  The government seems to say

that we can't do that and our clients are not supposed to by

their conditions of release, but the lawyers and we have

ethical standards we have to follow, that we've done nothing

1   wrong and there seems -- seems to say we did and I'd like to   09:47AM

2   know whether we are allowed to interview witnesses.  I will   09:47AM

3   tell you that I had one witness in this case say that he was   09:47AM

4   told not to talk to anybody, including their lawyers, and that   09:47AM

5   appeared to come from the government.   09:47AM

6          THE COURT:  All right.  Thank you, Mr. McConwell.   09:47AM

7   Mr. Pete Perez, Jr., on behalf Mr. Reed?  Anything?   09:47AM

8          MR. PEREZ:  No, Your Honor.   09:47AM

9          THE COURT:  All right.  Mr. Pole, on behalf of   09:47AM

10  anything -- Mr. Rogers, anything you wish to add?   09:47AM

11         MR. POLE:  Your Honor, just two things, one, we   09:47AM

12  continue to object and have objected to the government's   09:48AM

13  painting the defendants as being -- all defendants being in   09:48AM

14  control of the helicopters.  As we have pointed out and it's   09:48AM

15  as well clear from the superseding indictment, Mr. Randy   09:48AM

16  Rogers has no authority over those helicopters and has nothing   09:48AM

17  to do with those helicopters and shouldn't be painted with a   09:48AM

18  stroke as the government is trying to do here or in trial.   09:48AM

19         The only other thing I'd like to point out, Your   09:48AM

20  Honor, obviously while we join with all other defendants in   09:48AM

21  the motion, we're primarily concerned with the issue of the   09:48AM

22  right to interview witnesses and I just wanted to point out   09:48AM

23  that one of the cases that was cited was *United States versus*   09:48AM

24  *Brumel-Alvarez,* which is 991 F.2d 1452, and the reason I want   09:48AM

25  to point out is that was decided by the Ninth Circuit in 1993   09:48AM

1    that found a *Brady* violation where the government failed to    09:48AM

2    provide a DEA memo about one of their star witnesses on --    09:49AM

3    asking for the truth and I just want to point out that even    09:49AM

4    though that was 1993 and therefore before the U.S. Supreme    09:49AM

5    Court in *Kyles v. Whitley*, 514 U.S. 419, which wasn't decided    09:49AM

6    until 1995, that case is still consistent with the U.S.    09:49AM

7    Supreme Court that said that issues of *Brady* must be provided    09:49AM

8    to defense Counsel and is not that it is grounds for    09:49AM

9    dismissal.  I think -- but we absolutely have a right to    09:49AM

10   interview witnesses to receive information and the government    09:49AM

11   provided nothing to suggest that even if this Court has the    09:49AM

12   right to sanction one defense attorney for alleged misconduct,    09:49AM

13   that it would have a right to sanction all defense attorneys    09:49AM

14   for the same misconduct and not allow for a proper defense,    09:49AM

15   that is, the interviewing of witnesses.  I have nothing    09:49AM

16   further to add, Your Honor.    09:49AM

17            THE COURT:  Thank you, Mr. Pole.  Mr. Han,    09:49AM

18   anything on behalf of Hansen Helicopters other than what's    09:50AM

19   been argued?    09:50AM

20            MR. HAN:  Nothing to add, Your Honor.    09:50AM

21            THE COURT:  All right.  Ms. Miller, briefly in    09:50AM

22   response to the arguments you heard from defense.    09:50AM

23            MS. MILLER:  Yes, Your Honor.  First of all,    09:50AM

24   Mr. Martin actually said the letters that the government sent    09:50AM

25   to us were ten years old, that's absolutely not true.  We have    09:50AM

1  been sending them letters as recently as last year requesting    09:50AM

2  inspection of these helicopters.  I have letters dated April    09:50AM

3  29, 2015, June 23, 2015, July 8, 2015, then we can    09:50AM

4  fast-forward to May 20, 2016, July 20, 2016.  Let's move    09:50AM

5  ahead, May 14, 2018, July 2nd, 2019.  I can go on and on, Your    09:50AM

6  Honor, but the point is that is absolutely a misstatement of    09:50AM

7  fact.    09:51AM

8          The second thing is, Mr. Martin said that the    09:51AM

9  government doesn't understand Rule 16 and I would disagree    09:51AM

10  with that and I would also state the defense Counsel has    09:51AM

11  basically just kind of skirted over the explicit language of    09:51AM

12  Rule 16 which says that this Court has the authority to    09:51AM

13  require the defendant to permit inspection by the government    09:51AM

14  of tangible objects and it's not only those objects that the    09:51AM

15  defendant intends to use in its case in chief because, again,    09:51AM

16  a third misstatement by defense Counsel, which is that the    09:51AM

17  government cited -- case law, the government did cite    09:51AM

18  substantial case law to support its position, including case    09:51AM

19  law that indicates that if the defendant intends to    09:51AM

20  cross-examine any of the government's witnesses in a criminal    09:51AM

21  case regarding evidence, that the government is entitled to    09:52AM

22  view that evidence.  It is not a violation of the defendant's    09:52AM

23  Fifth Amendment privilege against self-incrimination and it is    09:52AM

24  not necessary that the defendants use that evidence in their    09:52AM

25  case in chief.  And all that case law was cited by the    09:52AM

1  government to the Court, so I won't repeat it, but it is just          09:52AM
2  completely ridiculous for defense to make that statement that          09:52AM
3  no case law was cited.                                                 09:52AM

4          The fourth thing, Your Honor, is I understand                  09:52AM
5  very well the distinction between administrative proceeding            09:52AM
6  and a civil proceeding.  As a matter of fact, it's going to be         09:52AM
7  really interesting to hear what the defendants have to say             09:52AM
8  when they turn around and argue that administrative                    09:52AM
9  proceedings are the most meaningful thing for the Court to             09:52AM
10 consider, but in this case, yes, I'm an attorney with the DOT          09:52AM
11 OIG.  I'm also a former federal prosecutor with extensive              09:52AM
12 experience in conspiracy cases.                                        09:53AM

13         And the fifth issue that I'd like to address as                09:53AM
14 an experienced federal prosecutor is, a conspiracy is not              09:53AM
15 completed until its abandoned.  We don't have to supersede in          09:53AM
16 order to argue, and we will argue, so all of the defense               09:53AM
17 Counsel need to be put on notice right now, it's the                   09:53AM
18 government's contention that this conspiracy has not ended,            09:53AM
19 the conspiracy has continued.                                          09:53AM

20         As a matter of fact, immediately after the                     09:53AM
21 indictment, the first indictment in this case, there was               09:53AM
22 another accident by one of these helicopters that the                  09:53AM
23 defendants owned and that the defendants have refused to allow         09:53AM
24 to be inspected.                                                       09:53AM

25         The sixth thing I want to address is the Cislo              09:53AM

issue.  This actually relates to the conflict of interest    09:53AM

motion that was filed, Your Honor.  If Mr. McConwell is       09:53AM

calling Mr. Cislo a liar and saying that he did not disclose  09:53AM

their interaction with each other truthfully to the FBI       09:54AM

agent, then again, I want to put Mr. McConwell on notice that 09:54AM

he will be called as a witness to testify under oath about    09:54AM

where that meeting took place, when that meeting took place,  09:54AM

what was said during the course of that meeting, because Mr.  09:54AM

Cislo has confirmed for us that Mr. McConwell specifically    09:54AM

told him that he should not be talking to him, he knew he     09:54AM

shouldn't be talking to him, but he was still talking with him 09:54AM

and Mr. Cislo said he felt intimidated.                       09:54AM

So to address the last point that Mr. Rogers'      09:54AM

Counsel brought up, the government isn't indicating in any way 09:54AM

shape or form that the defense cannot talk to witnesses or    09:54AM

understand what they're going to say.  What we are indicating 09:54AM

is that it is inappropriate and a violation of law to         09:54AM

intimidate witnesses, number one, and number two, to offer to 09:54AM

pay attorney's fees for witnesses because that is unduly      09:54AM

influencing a witness and it goes into tampering with         09:55AM

witnesses and that is what we object to.  I have nothing      09:55AM

further to say, Your Honor.  Thank you.                       09:55AM

MR. NICOLAYSEN:  Your Honor, I'll be happy to      09:55AM

respond.  This is Greg Nicolaysen on behalf of Defendant --   09:55AM

MS. MILLER:  No, Your Honor, I'm going to object   09:55AM

1    to Counsel responding.  The way these arguments go is, we        09:55AM

2    filed the motion --                                              09:55AM

3              THE COURT:  That's fine.  Ms. Miller, that's all       09:55AM

4    right.  All right.  The Court has heard enough.  The Court       09:55AM

5    will take the matters under advisement, will issue its           09:55AM

6    recommendation and decision as soon as possible.                09:55AM

7              MS. MILLER:  Thank you, Your Honor.                    09:55AM

8              THE COURT:  Thank you everybody.                       09:55AM

9              (Proceedings concluded at 9:55 a.m.)                   09:55AM

10                              * * *

11   ---------------------------------------------

12               CERTIFICATE OF OFFICIAL REPORTER

13

14   CITY OF HAGATNA            )
                                )  ss.
15   TERRITORY OF GUAM          )

16

17        I, Veronica F. Flores, Official Court Reporter for

18   the United States District Court of Guam, do hereby certify

19   the foregoing pages, 1 to 38, to be a true and correct

20   transcript of the proceedings held in the above-entitled

21   matter to the best of my ability.

22        Dated this 11th day of May 2020.

23

24                        /s/Veronica F. Flores
                          Veronica F. Flores
25

*Criminal Case No. 18-00010, USA v. Walker, et al.*