IN THE DISTRICT COURT OF GUAM

TERRITORY OF GUAM

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) Criminal Case No. 18-00010 |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| JOHN D. WALKER, et al., | ) |
| | ) |
| Defendants. | ) |

TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE FRANCES TYDINGCO-GATEWOOD,
CHIEF JUDGE
MAY 9, 2022; 7:37 A.M.
HAGATNA, GUAM

**Evidentiary Hearing**

Proceedings recorded *by certified stenographer, transcript produced by computer.*

Veronica F. Flores, CSR-RPR
Official Court Reporter
veronica_flores@gud.uscourts.gov

APPEARANCES


Appearing on behalf of plaintiff:


**OFFICE OF THE UNITED STATES ATTORNEY**
**BY: MARIE MILLER, SAUSA,**
**SAMANTHA MILLER, SAUSA,**
**STEPHEN LEON GUERRERO, AUSA**
Suite 500, Sirena Plaza
108 Hernan Cortez Avenue
Hagatna, Guam 96910
(671) 472-7332


Appearing on behalf of Defendant Walker:

**MARTIN LAW OFFICE**
**BY: MACK K. MARTIN, ESQ.**
125 Park Avenue, 5th Floor
Oklahoma City, OK 73102
(405) 236-8888


Appearing on behalf of Defendant Kapp:

**MCCONWELL LAW OFFICES**
**BY: EDWARD A. MCCONWELL, SR., ESQ.**
**LAURA MCCONWELL, ESQ.**
5201 Johnson Drive, Suite 300
Mission, KS 66205
(913) 262-0605

**LAW OFFICE OF ANTHONY C. PEREZ**
**BY: ANTHONY C. PEREZ, ESQ.**
238 Archbishop Flores Street
Suite 802, DNA Building
Hagatna, Guam 96910
(671) 475-5055

Appearing on behalf of Defendant Hansen:

**LAW OFFICE OF EDWARD C. HAN**
**BY: EDWARD C. HAN, ESQ.**
238 Archbishop Flores Street
DNA Building, Suite 802
Hagatna, Guam 96910
(671) 477-5055

ALSO PRESENT:

John D. Walker, Defendant

---------------------------------------------

I N D E X

Page

Defense Attorneys McConwells to withdraw
representation of Defendant Kapp and Attorney
Anthony Perez to take over representation          9

| | | |
|---|---|---|
| 1 | May 9, 2022; 7:37 a.m.; Hagatna, Guam | 07:21AM |
| 2 | * * * | 07:21AM |
| 3 | | 07:21AM |
| 4 | THE CLERK:  Good morning, Your Honor.  Criminal | 07:37AM |
| 5 | Case No. 18-00010, *United States of America versus John D.* | 07:37AM |
| 6 | *Walker, Phillip T. Kapp, Hansen Helicopters;* Evidentiary | 07:37AM |
| 7 | Hearing. | 07:37AM |
| 8 | Counsel, please state your appearances beginning | 07:37AM |
| 9 | with the government. | 07:37AM |
| 10 | MR. LEON GUERRERO:  Buenas and hafa adai, Your | 07:37AM |
| 11 | Honor, Stephen Leon Guerrero on behalf of United States.  Also | 07:37AM |
| 12 | -- | 07:37AM |
| 13 | THE COURT:  Okay, I think the mics are -- let me | 07:37AM |
| 14 | see if the mic is on.  Go ahead. | 07:37AM |
| 15 | MR. LEON GUERRERO:  Stephen Leon Guerrero on | 07:37AM |
| 16 | behalf of United States.  Also present are Special Assistant | 07:37AM |
| 17 | U.S. Attorneys Marie Miller and Samantha Miller. | 07:37AM |
| 18 | MS. M. MILLER:  Hafa adai, Your Honor. | 07:37AM |
| 19 | THE COURT:  Hafa adai, good morning everyone. | 07:37AM |
| 20 | MR. MARTIN:  Good morning, Your Honor, Mack | 07:37AM |
| 21 | Martin on behalf of John Walker who is also present. | 07:38AM |
| 22 | THE COURT:  Okay, good morning, Mr. Walker, Mr. | 07:38AM |
| 23 | Martin. | 07:38AM |
| 24 | THE DEFENDANT:  Morning. | 07:38AM |
| 25 | MR. MCCONWELL:  Morning, Your Honor, Edward | 07:38AM |

McConwell, Laura McConwell and Anthony Perez for Mr. Kapp, and `07:38AM`

also Mr. Ed Han is here for Hansen Helicopters, Inc.  And we `07:38AM`

entered our appearance on -- contingent on the Court's rule -- `07:38AM`

ruling for Hansen Helicopters pursuant to release from our `07:38AM`

client contract waiver, contract waiver. `07:38AM`

THE COURT:  And what about Mr. Kapp, what's his `07:38AM`

status right now? `07:38AM`

MR. MCCONWELL:  About an hour ago, I got a text `07:38AM`

-- well, maybe just a little bit more than that ago, got from `07:38AM`

his mother, he had a bad episode last night, sleep walking and `07:38AM`

had some problems and she couldn't wake him up.  So she took `07:38AM`

-- had an emergency -- had an ambulance take him to the `07:38AM`

emergency room and he's been readmitted to Mayo Clinic in `07:38AM`

Phoenix and he's just not going to be available today. `07:38AM`

THE COURT:  He's not available for today.  Okay, `07:38AM`

very well.  Thank you for -- `07:39AM`

MR. MCCONWELL:  I do have her phone number if you `07:39AM`

need to talk to her. `07:39AM`

THE COURT:  No, I will take your word as an `07:39AM`

officer of the court, Mr. McConwell. `07:39AM`

All right.  So we are here before the Court, I `07:39AM`

don't -- I don't think we need to seal this part, do we? `07:39AM`

We're not going to talk about his medical issues.  The Court `07:39AM`

already knows what the medical issues are.  It's just the `07:39AM`

conflict part.  So I don't feel it needs to be sealed, do you, `07:39AM`

```
 1    Counsels?                                                    07:39AM
 2              MR. MCCONWELL:  I don't.                           07:39AM
 3              THE COURT:  Let me just ask, Mr. McConwell, Ms.    07:39AM
 4    McConwell?                                                   07:39AM
 5              MR. MCCONWELL:  We don't -- it'd be fine to have   07:39AM
 6    it open, Your Honor.                                         07:39AM
 7              MS. MCCONWELL:  As long as we're not going to      07:39AM
 8    talk about -- you have the information.                      07:39AM
 9              THE COURT:  No, I have the information.  I don't   07:39AM
10    need to go through that.  And then prosecution, Ms. Marie   07:39AM
11    Miller?                                                     07:39AM
12              MS. M. MILLER:  No objection, Your Honor, to it   07:39AM
13    being open.                                                 07:39AM
14              THE COURT:  Okay, very well.  And then Mr.        07:39AM
15    Martin, Mr. Han, you would agree?                           07:39AM
16              MR. MARTIN:  No problem, Your Honor, fine with    07:39AM
17    Mr. Walker.                                                 07:39AM
18              MR. HAN:  None, Your Honor.                        07:39AM
19              THE COURT:  All right.  So this is an evidentiary 07:39AM
20    hearing on the proposed waiver of conflict of interest in the 07:39AM
21    joint stipulation filed by the parties on May 5, 2022 and the 07:40AM
22    Court has looked at Rule 44(c).  So I need to inquire promptly 07:40AM
23    about the propriety of joint representation and must        07:40AM
24    personally advise each defendant of the right to effective  07:40AM
25    assistance of Counsel, including separate representation.   07:40AM
```

          Now, obviously we can't speak to Mr. Kapp because
he is ill, not able to make it.  So that's one issue.  And
unless there is good cause to believe that no conflict of
interest is likely to arise, the Court must take appropriate
measures to protect each defendant's right to Counsel.

          Let me tell you something, I am not a fan of
joint representation.  To be perfectly honest with you, no man
can serve two masters, as they say in the Bible.  And I just
don't -- I just am not a fan of it.  I know that there is an
alleged -- and I just say that, you know, because we haven't
really -- anyway, there is an allegation that there is a joint
defense presentation, although there is some issues regarding
that, but putting that aside, the parties have proposed that
Defendant Kapp's off-island Counsel, Laura and Ed McConwell,
entered an appearance on behalf of Defendant Hansen
Helicopters as well.  The Court has severed Kapp -- Mr. Kapp's
presence for this trial.  And though -- even though Defendant
Kapp's been severed, the representation would still be one of
which the McConwells could be Counsel for both Kapp and --
Mr. Kapp, excuse me, and Hansen Helicopters.

          And as the parties know, the U.S. Supreme Court
generally disfavors joint representation because even the
unexpected conflict that could arise later, may not be right
now at this moment, although I think there could be or there
is, but I'll tell you, having been forced to -- not forced, I

```
 1   shouldn't say forced because you can't really force the judge    07:42AM

 2   unless -- well, let's put it this way, having been in a          07:42AM

 3   situation where a defendant -- defense Counsel represented two   07:42AM

 4   defendants and another judge found that there was no conflict,   07:42AM

 5   when it came to sentencing, there clearly was a conflict.  I     07:42AM

 6   mean maybe during the course of the plea agreement or the       07:42AM

 7   trial there wasn't, but I'm just telling you that that's an      07:42AM

 8   issue.                                                          07:42AM

 9           The Court is concerned with not only a potential        07:42AM

10   conflict later, like as I've just indicated, but the fact that  07:42AM

11   the Defendant Hansen Helicopters, who's being represented ably  07:42AM

12   by Mr. Ed Han, they are said to be paying for Defendant Kapp's  07:42AM

13   legal representation.  The fact that Mr. Kapp's capacity to      07:42AM

14   waive a conflict is right now limited, because he can't be      07:43AM

15   here, he can't be on the phone, he can't be -- and I don't      07:43AM

16   want him just on the phone, I want to see him -- he doesn't     07:43AM

17   have to be here live but I would like to see him via Zoom, I    07:43AM

18   want to see him video.  And the fact is -- and there is no      07:43AM

19   dispute as to what I'm saying, is that Defendant Hansen         07:43AM

20   Helicopters is Mr. Kapp's employer.                            07:43AM

21           So where do we go from here?  Let me hear from         07:43AM

22   Mr. or Ms. McConwell, then I'll hear from the prosecution.     07:43AM

23   And Mr. Han too.  Yes, I mean we have the jury and I've asked  07:43AM

24   the jury to come back this afternoon.  I wanted to get this    07:43AM

25   taken care of.  So the jurors are coming in at 1:00, I think.  07:43AM
```

1    What do you think?                                          07:43AM

2            MS. MCCONWELL:  Your Honor, in reviewing your       07:43AM

3    order and the concerns that you raised in light of *U.S. versus*   07:44AM

4    *Wheat*, *Holloway v. Arkansas*, you know, we have said that we   07:44AM

5    have jointly been working on a defense -- our -- jointly with   07:44AM

6    all Counsel.                                                07:44AM

7            In fact, last week when we brought this to the      07:44AM

8    Court's attention, the concern -- and at the hearing with our   07:44AM

9    concerns about Mr. Kapp, is that, you know, we would need to   07:44AM

10   -- the trial will just need to be continued on, and so a way   07:44AM

11   for that not to happen would be for us to shift to be able to   07:44AM

12   also represent Hansen Helicopters who, as you said, is       07:44AM

13   Mr. Kapp's employer, and pursuant to the Rules of Professional   07:44AM

14   Responsibility, an employer and an employee can be represented   07:44AM

15   by the same Counsel.  Mr. Kapp will continue to be represented   07:44AM

16   by Mr. Perez.  Where -- he is not -- he is not going to enter   07:44AM

17   an appearance with Hansen Helicopters because Mr. Han is      07:44AM

18   representing Hansen Helicopters.  So we would be representing   07:44AM

19   Hansen with --                                              07:44AM

20           THE COURT:  Oh, I see.  So you're totally -- I'm     07:45AM

21   sorry.  So you're totally like withdrawing representation of   07:45AM

22   Mr. Kapp?  And Mr. Perez is taking over when Kapp is able to   07:45AM

23   come into trial?                                            07:45AM

24           MS. MCCONWELL:  Yes.                                 07:45AM

25           THE COURT:  Oh, so you guys are -- so today          07:45AM

you're issuing -- I mean if you're doing a withdrawal 07:45AM

completely, and -- uhh -- and -- yeah, I guess.  I mean I -- 07:45AM

yeah, go ahead. 07:45AM

          MS. MCCONWELL:  I do need to respond to a motion 07:45AM

that the government filed last week which was relating to a 07:45AM

motion that we had filed you know -- we filed on behalf of Mr. 07:45AM

Kapp and that's due later this week.  So we do need to file -- 07:45AM

we do need to file that, but then we can withdraw from Mr. 07:45AM

Kapp; he's got Mr. Perez.  We -- and we went and entered our 07:45AM

appearance for Hansen Helicopters so that we -- you're not 07:45AM

going to have the record protected, because I wasn't clear in 07:45AM

reading the local rules how -- for instance pro hac vice, how 07:45AM

that shifts.  And so I didn't think we needed to file a whole 07:46AM

separate -- 07:46AM

          THE COURT:  No, I don't -- you don't -- we could 07:46AM

talk about the pro hac vice thing later.  That's not really a 07:46AM

major issue.  I mean that's not a major issue in terms of 07:46AM

payment right now, okay. 07:46AM

          So just to be clear, what is the motion that's 07:46AM

outstanding that you want to reply to? 07:46AM

          MS. MCCONWELL:  Sanction, motion for sanctions 07:46AM

and to strike the cross motion for motion in limine. 07:46AM

          THE COURT:  Okay.  All right.  All right.  But to 07:46AM

be clear, you want to have that ability to do that but with 07:46AM

regard to the representation of Mr. Kapp for trial right now, 07:46AM

```
 1   you want to withdraw and Mr. Perez is going to take over?          07:46AM

 2              MS. MCCONWELL:  Will stay.                               07:46AM

 3              THE COURT:  And -- okay, okay, thank you.                07:46AM

 4              MS. MCCONWELL:  And then we have -- Mr. Kapp did         07:46AM

 5   execute a waiver and a consent to this and did his mother --       07:46AM

 6   and as did his mother, who is his power of attorney.               07:46AM

 7              THE COURT:  Right, so -- but you know what, I            07:46AM

 8   like to see these guys in person.                                  07:46AM

 9              MS. MCCONWELL:  Right, no, I understand that.  We        07:47AM

10   were concerned that this happened.  He didn't expect that he'd     07:47AM

11   be very sick.                                                      07:47AM

12              THE COURT:  Well, it sounds like he's very sick         07:47AM

13   so I don't disbelieve that.  I guess the question is, he's so      07:47AM

14   sick he can't even do a conflict, I mean he can't even talk to     07:47AM

15   me probably, and until -- you know, intelligent knowing waiver     07:47AM

16   of conflict, he probably can't do that.                           07:47AM

17              MS. MCCONWELL:  We kept, you know, hoping -- he         07:47AM

18   kind of has his good days and his bad days.                        07:47AM

19              THE COURT:  Yeah.  I mean, well, clearly, he has        07:47AM

20   to give a knowing intelligent waiver, so he can't do that.         07:47AM

21              MS. MCCONWELL:  Right.                                   07:47AM

22              THE COURT:  Okay, thank you.  Mr. Perez, do you         07:47AM

23   agree that you are going to now be lead Counsel for Mr. Kapp,      07:47AM

24   if he comes back into the fold with trial?                         07:47AM

25              MR. PEREZ:  I agree.                                     07:47AM
```

```
 1            THE COURT:  Okay.  Mr. Han, you -- what's your        07:47AM

 2   position of having the McConwells join you as Counsel?        07:47AM

 3            MR. HAN:  I agree to them joining the                07:47AM

 4   representation, Your Honor.                                   07:47AM

 5            THE COURT:  So the three of you will be Counsels     07:47AM

 6   for Hansen Helicopters?                                       07:47AM

 7            MR. HAN:  Correct.                                   07:47AM

 8            THE COURT:  All right.  And so U.S. attorneys,       07:48AM

 9   well, sounds like wow, that was the easiest fix, maybe.  I    07:48AM

10   guess.                                                        07:48AM

11            MS. M. MILLER:  No, Your Honor -- good morning.      07:48AM

12            THE COURT:  Good morning.                            07:48AM

13            MS. M. MILLER:  We knew there was going to be a      07:48AM

14   request for joint representation.  What we didn't know until  07:48AM

15   this weekend was that they were going to withdraw completely  07:48AM

16   as representation -- as lawyers for Mr. Kapp.                 07:48AM

17            THE COURT:  Yeah.                                    07:48AM

18            MS. M. MILLER:  Which I think, if they represent,    07:48AM

19   which they have that, you know, there is no conflict and      07:48AM

20   Mr. Kapp waives that conflict and Hansen Helicopters obviously 07:48AM

21   waives any conflict, I think then we're perfectly fine.  Until 07:48AM

22   this point, there hasn't been a divergent of -- defense,      07:48AM

23   because there's been this ostensible joint defense agreement, 07:48AM

24   so everything has been consistent there.                      07:48AM

25            I think the one thing that I want to remind Your     07:48AM
```

1    Honor is that the government did file a motion regarding the    07:48AM

2    fact that we do believe that Ed McConwell may be a witness in    07:48AM

3    this case at some point.  And the reason why I bring this up    07:48AM

4    and it's interesting because it is associated with this motion    07:48AM

5    for sanctions, the defense attorneys, in a pleading,    07:48AM

6    specifically ECF 541, said on the record on behalf of their    07:49AM

7    defendants that the helicopters were owned by the Vanuatu    07:49AM

8    companies, and you've heard that in argument with Mr. Reed,    07:49AM

9    and that they were registered in Vanuatu.    07:49AM

10            After they made that representation in a pleading    07:49AM

11    that they filed with the Court as representatives of the Court    07:49AM

12    but also of their clients, I then contacted defense Counsel    07:49AM

13    and said, I know that these helicopters were never registered    07:49AM

14    in Vanuatu and you made that assertion to the Court in a filed    07:49AM

15    document.  They then retracted their statement in ECF 571 and    07:49AM

16    they said that representing to the Court that these    07:49AM

17    helicopters were owned and registered in Vanuatu was a    07:49AM

18    mistake, it was a clerical mistake, it was unintended, they    07:49AM

19    did not intend to do that.  That's in ECF 571.  Then in reply    07:50AM

20    to a motion filed by the government, we again see Mr.    07:50AM

21    McConwell in 2022 making a representation that the helicopters    07:50AM

22    are owned and registered in Vanuatu, when again, the    07:50AM

23    government knows for a fact that the helicopters have never    07:50AM

24    been registered in Vanuatu.    07:50AM

25            So we have these representations being made on    07:50AM

```
 1    behalf of the defendants that are obviously -- they can't both    07:50AM
 2    be true that they are or they are not.  We know they are not.      07:50AM
 3    We have substantial evidence in the record about the ownership     07:50AM
 4    of the helicopters and the registration of the helicopters,        07:50AM
 5    which begs the question, why are these assertions being made       07:50AM
 6    in documents that are being filed with the Court?  Because we      07:50AM
 7    have 541 and we have 571 --                                        07:50AM
 8              THE COURT:  Okay.                                         07:50AM
 9              MS. M. MILLER:  -- then we have the                       07:50AM
10    representation just recently in 14 -- I can't remember the         07:50AM
11    exact number, but I'll get it for you with the ECF.  So moving     07:51AM
12    forward, and this is an issue we raised earlier, if the            07:51AM
13    defendants are going to rely on advice of Counsel that an          07:51AM
14    attorney told them that they can continue operating the way        07:51AM
15    they're operating because the FAA should have never registered     07:51AM
16    the aircraft in the first place, which we believe is not a         07:51AM
17    legal defense to these charges because these are criminal          07:51AM
18    charges, this is not an administrative proceeding, if that         07:51AM
19    attorney is Ed McConwell, which we believe it is, because the      07:51AM
20    only evidence in the record of this assertion is by                07:51AM
21    Mr. McConwell, then Mr. McConwell becomes a witness.               07:51AM
22              Now, this could be a very elegant solution, if           07:51AM
23    they withdraw and they're permitted to withdraw from               07:51AM
24    representation of Kapp, fantastic, because now they're             07:51AM
25    co-Counsel with Mr. Han, which means when this is fully            07:51AM
```

```
1   developed with the Court, I think you will see, Your Honor,      07:51AM
2   that the only evidence in the record to support this assertion   07:52AM
3   is Mr. McConwell.  If the Court then agrees he has to be a        07:52AM
4   witness, because that is the only way this is fairly shaken       07:52AM
5   out, then it doesn't stop the trial, it doesn't prejudice        07:52AM
6   Hansen Helicopters, because they have been adequately            07:52AM
7   represented, as Your Honor has recognized, by Mr. Han.          07:52AM
8            So if he has to pull out and become a witness at        07:52AM
9   that point, that's fine.  I just want to make sure Your Honor    07:52AM
10  is aware that this is an issue that has been T'ed up from the    07:52AM
11  beginning.  We have four times filed motions regarding          07:52AM
12  potential conflict because the only evidence in the record of    07:52AM
13  this defense has been from Mr. McConwell.  There is no other    07:52AM
14  evidence in the record.                                         07:52AM
15           So if they're going to continue to argue this,         07:52AM
16  then the government needs to be able to cross-examine the        07:52AM
17  basis for this assertion and this argument.  So I just want      07:52AM
18  Your Honor to be aware of that because that is a potential       07:52AM
19  issue.                                                          07:52AM
20           THE COURT:  All right, very well.                       07:52AM
21           MS. M. MILLER:  And it's ECF 1518 was the ECF,          07:53AM
22  the most recent one where we see the re-emergence of the        07:53AM
23  assertion of Vanuatu.                                           07:53AM
24           MS. MCCONWELL:  For sanctions --                        07:53AM
25       (Cour reporter asked Counsel speak on microphone.)         07:53AM
```

|   |   |   |
|---|---|---|
| 1 | THE COURT:  Yes, I'm sorry, Ms. McConwell? | 07:53AM |
| 2 | I'm sorry, can you get on the mic?  I'm sorry, we | 07:53AM |
| 3 | can't hear you. | 07:53AM |
| 4 | MS. MCCONWELL:  1518 is the government's sanction | 07:53AM |
| 5 | motion, which the time for us to respond has -- | 07:53AM |
| 6 | MS. M. MILLER:  Yes, and theirs is 1419? | 07:53AM |
| 7 | MS. S. MILLER:  92. | 07:53AM |
| 8 | MS. M. MILLER:  1492, I'm sorry.  So if you look | 07:53AM |
| 9 | at 541, that's where they say "owned and registered by | 07:53AM |
| 10 | Vanuatu"; 571 that's where they say "we made a mistake, we're | 07:53AM |
| 11 | retracting that statement that they're owned and registered by | 07:53AM |
| 12 | Vanuatu."  Then 1492, they again are making the statement | 07:53AM |
| 13 | "owned and registered by Vanuatu" and that's why we filed to | 07:53AM |
| 14 | the motion for sanctions, because you can't have it both ways. | 07:53AM |
| 15 | And that's the motion that Ms. McConwell said they want to | 07:53AM |
| 16 | stay as Counsel for Kapp until they respond to that motion and | 07:53AM |
| 17 | then they'll withdraw as Counsel for Kapp and they will be | 07:53AM |
| 18 | co-Counsel for Hansen. | 07:54AM |
| 19 | THE COURT:  I think it's maybe 573, not 571.  But | 07:54AM |
| 20 | go ahead. | 07:54AM |
| 21 | MS. M. MILLER:  So 541, then 571, I believe, is | 07:54AM |
| 22 | the retraction. | 07:54AM |
| 23 | THE COURT:  I think it's 573, not 571. | 07:54AM |
| 24 | MS. M. MILLER:  Okay, and then it was 1492 was | 07:54AM |
| 25 | where they reassert. | 07:54AM |

```
 1              THE COURT:  Okay.  Thank you.  Yes,          07:54AM
 2   Mr. McConwell?                                          07:54AM
 3              MR. MCCONWELL:  And I told Ms. Miller this    07:54AM
 4   before, the reference back years ago to being registered in  07:54AM
 5   Vanuatu was by my co-Counsel, J. Michael Westin in Texas, he  07:54AM
 6   did that without my knowledge and I regret I didn't catch it  07:54AM
 7   and we corrected it right away.  I don't believe I've ever    07:54AM
 8   said since that point that there[sic] have ever been         07:54AM
 9   registered in Vanuatu.  I can't imagine I would have said it  07:54AM
10   because it's not true.                                  07:54AM
11              THE COURT:  Okay.  Well --                   07:54AM
12              MR. MCCONWELL:  And then if I had to be called as  07:54AM
13   a witness for them, I don't think that even disqualifies me.  07:54AM
14   If I had to be called by as a witness for our case, that might  07:54AM
15   be something different, but we need to respond to your motion  07:55AM
16   because we're not saying what she's saying.             07:55AM
17              THE COURT:  Okay, well, let me just think about  07:55AM
18   this then.  I think I may allow you to respond of course and  07:55AM
19   then just at least for the limited purpose of continuing your  07:55AM
20   representation of Mr. Kapp and then allow you to submit in  07:55AM
21   writing that you have spoken to your client that he agrees  07:55AM
22   that you guys are withdrawing -- that you have spoken       07:55AM
23   previously when he was of sound mind and that you are actually  07:55AM
24   withdrawing and he understands that and he understands that  07:55AM
25   you are moving to work -- I mean to jointly represent the  07:55AM
```

1    Hansen Helicopters, as long as you could indicate that to me,    07:55AM

2    I'll take your word for it.  Yes?    07:55AM

3              MR. MCCONWELL:  He has and he was lucid when he    07:55AM

4    signed the waiver, conflict waiver, and Mr. Perez talked to    07:55AM

5    him, he said you have right to other Counsel to talk about it,    07:55AM

6    he did that with Mr. Perez.  He was lucid when he talked to    07:56AM

7    Mr. Perez and he totally understood the whole issue.    07:56AM

8              THE COURT:  All right.  So just put that in    07:56AM

9    writing what you -- just memorialize that in writing so I can    07:56AM

10   just have that on the record that all of you have spoken to    07:56AM

11   him at the time when he could make a knowing intelligent    07:56AM

12   decision about what's going on.    07:56AM

13             All right.  And so it makes everything less    07:56AM

14   complicated that we are not having a joint representation,    07:56AM

15   because I really am not -- I was not going to allow that.  I    07:56AM

16   don't care, I just -- like I said, I've seen this happen    07:56AM

17   unfold and it just always unravels to the worst degree.  Yes?    07:56AM

18             MS. M. MILLER:  This is the concern the    07:56AM

19   government has:  Mr. McConwell just stood up and as officer    07:56AM

20   the Court said "I wouldn't have said the helicopters are    07:56AM

21   registered in Vanuatu because I know that's not true."  I am    07:56AM

22   reading directly from 1492, ECF 1492, "Argument, the Vanuatu    07:56AM

23   registered aircraft have never been civil aircraft of the    07:57AM

24   U.S."  This is on page 2 of Exhibit 1492.  ECF 1492.  And this    07:57AM

25   is a document that was signed by Mr. McConwell as an officer    07:57AM

```
 1    of the Court.                                              07:57AM

 2              THE COURT:  Okay, so why don't we -- we'll go    07:57AM

 3    ahead and resolve that when we need to resolve it.  I don't 07:57AM

 4    need to get into the merits of it because, honestly, I have to 07:57AM

 5    just read it and, you know, fully informed.                07:57AM

 6              All right.  Okay, so things are a lot better.    07:57AM

 7    How is everybody?  The good news is the jurors are still in 07:57AM

 8    one piece.                                                 07:57AM

 9              MS. M. MILLER:  Yay.                             07:57AM

10              THE COURT:  And also too, as you probably have   07:57AM

11    heard, I just got back from Washington, D.C. a couple days or 07:57AM

12    actually, I think Thursday night.  And so I know I sound like 07:57AM

13    I have a cold but I'm actually have a little allergies and I 07:57AM

14    had that in D.C., you probably heard me.  I do not have COVID. 07:57AM

15    I just want you all to know that.  I tested every day I was in 07:58AM

16    Washington, D.C.                                           07:58AM

17              MS. M. MILLER:  The allergies, Your Honor, just  07:58AM

18    so you know, in that area, are horrific.                   07:58AM

19              THE COURT:  Oh, yeah, so I mean -- but they also  07:58AM

20    required every judge, every federal judge to test every    07:58AM

21    morning.                                                   07:58AM

22              MS. M. MILLER:  Wow.                             07:58AM

23              THE COURT:  In D.C. for like six days, to self   07:58AM

24    administer a home test.  If you're not used to it, it's very 07:58AM

25    hurtful.  It hurts.  So -- and I still continue to test    07:58AM
```

because one of the judges just wrote us a note, and said "Oh, 07:58AM

sorry, I was sitting next to you, Judge, and I tested positive 07:58AM

but I don't have symptoms and I'm still negative."  So just an 07:58AM

FYI.  I bring all this to your attention because the governor, 07:58AM

during my absence, has lifted the mask requirements, so I have 07:58AM

altered my General Order here at the District Court and I've 07:58AM

indicated that pursuant to the governor's executive order that 07:58AM

we would follow suit and that we would make it optional. 07:59AM

There are some people that still wish to wear masks, including 07:59AM

the jurors. 07:59AM

     At first I considered back and forth should I 07:59AM

make the jurors wear a mask, and I thought, well, you know, 07:59AM

Guam is pretty much vaccinated and we're not in the clear but 07:59AM

I mean we're looking good and so I just decided to make it 07:59AM

optional for them.  Okay?  All right.  Any problems with that, 07:59AM

Counsels? 07:59AM

     (No response.) 07:59AM

     THE COURT:  All right.  But I will say that the 07:59AM

questions downstairs in the entryway is still relevant because 07:59AM

we want to make sure that, you know, yeah, we want to make 07:59AM

sure that people are -- just have your mask just in case if 07:59AM

there is issues, but we want to make sure that before people 07:59AM

enter the courthouse, that they don't have the symptoms of 07:59AM

COVID and if they have it, they shouldn't even be over here at 07:59AM

the courthouse, but I did tell the jurors not to -- I wasn't 08:00AM

1   sure how long this would go today, this morning, this          08:00AM
2   particular hearing.  Plus also I have a law month activity      08:00AM
3   that I did not know, I forgot that I was involved in.  So I'm    08:00AM
4   going to go that this morning and get it over with, but I will   08:00AM
5   be here and we will start trial promptly at 1:00.  All jurors    08:00AM
6   will be here, we don't have to give them lunch today but I       08:00AM
7   feel that based on -- just based on still the COVID situation    08:00AM
8   on Guam, even though it's getting better, but the fact is, is    08:00AM
9   that our lunch break is so tight, 45 minutes is hardly any       08:00AM
10  time, so the Court will continue to provide lunch for the        08:00AM
11  jurors during the course of the trial.                           08:00AM
12          Now that we have streamlined the trial, I think          08:00AM
13  it's going to go a lot faster.  How long do you think your       08:00AM
14  case in chief will be?                                           08:00AM
15          MS. M. MILLER:  So, Your Honor, if we are going          08:00AM
16  to go on Saturdays as Your Honor represented before, the        08:00AM
17  government will be completed with their case in probably less    08:00AM
18  than three weeks.                                                08:01AM
19          THE COURT:  Okay.                                        08:01AM
20          MS. M. MILLER:  We think it may be two weeks             08:01AM
21  because we do believe, as Mr. Martin represented before, he's    08:01AM
22  a very succinct cross-examiner.                                  08:01AM
23          THE COURT:  Wow.                                         08:01AM
24          MS. M. MILLER:  So I do think this is --                 08:01AM
25          MR. MARTIN:  I don't think I said that.                  08:01AM

```
 1         MS. M. MILLER:  No, he is.  And also --          08:01AM

 2         THE COURT:  He's laser focused like you?          08:01AM

 3         MS. M. MILLER:  Yeah, and we also agreed amongst  08:01AM

 4    each other and ourselves, we're not going to have a bunch of  08:01AM

 5    recross and re-redirect and re-recross --          08:01AM

 6         THE COURT:  No, I'll keep it simple, it will be  08:01AM

 7    direct, cross, redirect.          08:01AM

 8         MS. M. MILLER:  Yes, and we also narrowed down  08:01AM

 9    our witnesses and that was part of stipulation with the  08:01AM

10    defense.  We eliminated some of the experts that we had in  08:01AM

11    lieu of other experts that we have to combine the testimonies,  08:01AM

12    so instead of having multiple witnesses, we have one, so --  08:01AM

13    and we've also been working on -- I just got from Ms.  08:01AM

14    McConwell yesterday, the Marinho transcripts.          08:01AM

15         So what we're doing is we're working on those  08:01AM

16    deposition transcripts the way in which Your Honor asked for  08:01AM

17    them to be highlighted where the government highlights one  08:02AM

18    color, defense highlights another color and then we place our  08:02AM

19    objections on that one exhibit, so Your Honor will have the  08:02AM

20    opportunity to resolve those objections easily and readily and  08:02AM

21    then we could present that testimony to the jury.          08:02AM

22         THE COURT:  All right.  And in the pro hac vice  08:02AM

23    matter, I think it's per case, under our local rule, so you  08:02AM

24    don't have to reapply and repay.  It's per case, as I  08:02AM

25    understand it.  Go ahead.          08:02AM
```

```
 1          MS. MCCONWELL:  I did have one thing, in          08:02AM

 2   preparing for this hearing and pulling everything out because   08:02AM

 3   some things were filed when we were moving -- oh, I'm sorry.   08:02AM

 4          THE COURT:  Yeah.                                  08:02AM

 5          MS. MCCONWELL:  On our six of our stipulation,   08:02AM

 6   you have Randy Brietzman is going to testify as an expert for   08:02AM

 7   Jeff Jennings, but Randy Brietzman is not -- has never been   08:02AM

 8   designated as an expert, so somebody else will need to testify   08:02AM

 9   for Mr. Jennings, and then I was hoping I would get a little   08:02AM

10   synopsis of how you're breaking up all of that -- the other   08:03AM

11   expert disclosures because I don't have like -- you have   08:03AM

12   Mr. Steffes who I think is going to go away, so I didn't know   08:03AM

13   how that was all going to be broken up.                 08:03AM

14          MS. M. MILLER:  We could just -- we could --   08:03AM

15   basically what we've done, Your Honor, is the expert   08:03AM

16   representations that we made in our disclosures to the Court   08:03AM

17   very early on about what the experts would say, that is just   08:03AM

18   going to be distributed amongst existing experts.       08:03AM

19          So for example, Mr. Steffes, Mr. Jennings, their   08:03AM

20   testimony is just going to be spread out amongst other experts   08:03AM

21   who have the same background and same expertise.  So what we   08:03AM

22   could do for the defense is identify which of these         08:03AM

23   paragraphs -- would that help, Laura?                   08:03AM

24          MS. MCCONWELL:  Yes.                              08:03AM

25          MS. M. MILLER:  In the expert disclosures, we'll   08:03AM
```

```
 1   go to which other individual witnesses and that will, I think,     08:03AM
 2   resolve the issue, and we could do that before they testify.       08:03AM
 3           MS. MCCONWELL:  That'll be great.  I just didn't           08:03AM
 4   want to create an appearance that we were consenting to Randy      08:03AM
 5   Brietzman being elevated to an expert witness because we're        08:04AM
 6   not.                                                               08:04AM
 7           MS. M. MILLER:  Yeah, so Randy Brietzman is --             08:04AM
 8   does have the expertise and, you know, he was going to testify     08:04AM
 9   as a fact witness for MD Helicopters.  He is a pilot.  He's        08:04AM
10   been a pilot for more than 25 years, Your Honor, both with         08:04AM
11   military and as a private commercial pilot.  He has a              08:04AM
12   substantially similar background to Mr. Jennings, who was          08:04AM
13   disclosed as an expert.  We were not going to use                  08:04AM
14   Mr. Brietzman as an expert.  We were going to use him as fact      08:04AM
15   witness regarding MD Helicopters, but since he is a 25-year        08:04AM
16   helicopter pilot, an expert in HO6's, worked for the FAA           08:04AM
17   previously, we're just, you know, combining a fact witness         08:04AM
18   with an expert witness to have him testify exactly to what         08:04AM
19   Mr. Jennings would have testified to.  We could call Jennings      08:04AM
20   and add another witness.  That would extend the government's       08:04AM
21   case to three weeks, which is fine.                                08:04AM
22           MR. MARTIN:  The concern we have, Your Honor, is           08:04AM
23   not so much who they call but we want to know what they're         08:04AM
24   going to say.  We've been given all these reports but now          08:05AM
25   they've shuffled the deck on us.  I don't want to get up there     08:05AM
```

1   that I'm holding an ace but we're cross-examining a joker,   08:05AM

2   okay?  That's the problem.  We don't have expert reports from   08:05AM

3   these people, since they've all been combined.  That's the   08:05AM

4   concern I have.   08:05AM

5           THE COURT:  All right.   08:05AM

6           MR. MARTIN:  Not the number.   08:05AM

7           MS. M. MILLER:  And I just said I would resolve   08:05AM

8   that, Your Honor, by absolutely identifying which section and   08:05AM

9   which expert disclosure is going to which witness so that   08:05AM

10  there is no confusion and Counsel is readily available to   08:05AM

11  address it.   08:05AM

12          THE COURT:  That's good to know.  All right,   08:05AM

13  fabulous.  That's good.   08:05AM

14          MR. MCCONWELL:  While we're doing housekeeping on   08:05AM

15  experts, they have a witness, Mr. Guzzetti, who may be here,   08:05AM

16  there has been a representation that nine people have been   08:05AM

17  killed involving these helicopters and presumably pointing at   08:05AM

18  the causation of something that Hansen Helicopters or any of   08:05AM

19  the defendants did.  We've not seen one -- and they're talking   08:05AM

20  about the pitch link control on the tail rotor as being the   08:05AM

21  cause.  We've not seen any evidence of a failure of a pitch   08:06AM

22  link -- a tail rotor pitch link that's caused any accident,   08:06AM

23  let alone a death.  And we're going to ask for a Daubert   08:06AM

24  hearing and a motion in limine since that seems to be the way   08:06AM

25  they're starting to do this and it's about half prepared right   08:06AM

```
 1  now, but I wanted to put the Court on notice that when he       08:06AM
 2  comes up, he's supposed to be one of the last witnesses before  08:06AM
 3  that -- long before that I would have filed a motion dealing     08:06AM
 4  with this, but you know, I'm kind of tired of hearing we've      08:06AM
 5  killed people, when I don't believe there is any evidence that   08:06AM
 6  that's occurred.  And I think that's a major issue that should   08:06AM
 7  be subject to a motion in limine and a hearing outside the       08:06AM
 8  jury before, but we should at least know what they're talking    08:06AM
 9  about.  We don't even know which people they claim were killed   08:06AM
10  by a pitch link failure, we don't know what the failure was,     08:06AM
11  what happened, which aircraft, no information.  And we did       08:06AM
12  file Daubert motions earlier and the Court said "Let's put it    08:06AM
13  off to the time of the trial" and we're here.                    08:06AM
14           MS. M. MILLER:  Anyway, Your Honor, what we did         08:06AM
15  with Mr. Guzzetti's testimony is, he prepared a summary chart    08:07AM
16  and his summary chart, which the defense has had since August   08:07AM
17  of 2020, identified every single accident, identified the NTSB   08:07AM
18  reports supporting the accidents, the FAA analysis supporting    08:07AM
19  the accidents, has identified every single piece of evidence     08:07AM
20  Mr. Guzzetti is relying on.  They had that information since     08:07AM
21  August of 2020, so it's a little insincere to say we're going    08:07AM
22  to file a motion in limine.  That time has passed for them to    08:07AM
23  file a motion in limine.                                         08:07AM
24           Additionally, Your Honor, the very first time we        08:07AM
25  did our trial brief, which, again, was more than two years ago   08:07AM
```

1   in anticipation of an earlier trial, we disclosed that we will   08:07AM

2   present evidence that nine people died and we also disclosed   08:07AM

3   which accidents we contend were caused by a failure of the   08:07AM

4   tail rotor pitch change link.  We've also disclosed through   08:07AM

5   Mr. Guzzetti's material evidence of pitch link failures and   08:08AM

6   what causes them and we've disclosed written communications   08:08AM

7   between the defendants where they are identifying and their   08:08AM

8   own pilots and mechanics are identifying problems with the   08:08AM

9   tail rotor pitch link.  They have all the evidence, they had   08:08AM

10  the evidence for years and we will move to strike any motion   08:08AM

11  that they file at this late date because they just haven't   08:08AM

12  been prepared.   08:08AM

13          THE COURT:  So let me just say this, it's not   08:08AM

14  before me, so I'm not going to discuss it.  When it gets   08:08AM

15  before me, I'll look at it, okay.   08:08AM

16          MR. MCCONWELL:  Thank you, Your Honor.   08:08AM

17          THE COURT:  As of right now, we're going to trial   08:08AM

18  full steam ahead.  And if -- let me just say this, if Counsels   08:08AM

19  are mindful of, you know, streamlining everything, we may not   08:08AM

20  have to go on Saturdays.  Let me just say that.  I did that   08:08AM

21  because, honestly, because Mr. Lujan likes to drag things out   08:08AM

22  and I'll be honest.  So you know, and so I was like, okay, I'm   08:08AM

23  going to put the pressure on and that's the truth.  So that's   08:08AM

24  just the way it goes.  And to the extent that I was able to   08:09AM

25  control him, things still got dragged out, so I just needed to   08:09AM

make sure that everyone understands that when the jurors come 08:09AM
here, each time they're here, I want them to be hearing 08:09AM
evidence.  I don't want them to be waiting while we're doing 08:09AM
motions. 08:09AM

So a reminder to all Counsels, if you haven't 08:09AM
filed a motion and you're going to, make sure that your time 08:09AM
really hasn't passed, number one.  There has been no waiver of 08:09AM
any issues regarding that.  And number two, if there is a 08:09AM
motion that I find worthy and of a hearing, then we will have 08:09AM
the hearing outside of the jury time.  But I'm going to stay 08:09AM
strict within the guidelines for the jury time because I 08:09AM
promised them all that.  Okay. 08:09AM

All right.  Are there any other issues before we 08:09AM
adjourn -- recess until 1:00?  Yes, Mr. Martin? 08:09AM

MR. MARTIN:  Your Honor, it's not necessarily an 08:10AM
issue, but it'd be how the Court intended to advise the jury 08:10AM
that Mr. Kapp's no longer here, Mr. Crowe is no longer here, 08:10AM
Mr. -- the McConwells not represent Hansen.  I mean there is 08:10AM
kind of a housekeeping measure that we may want to consider. 08:10AM

THE COURT:  I'll prepare a -- I'll work with my 08:10AM
law clerk and I'll prepare something. 08:10AM

MR. MCCONWELL:  Very well. 08:10AM

THE COURT:  What I'll do is I'll run it by you 08:10AM
all before we do it, see if there is any suggestions, or 08:10AM
amendments that you might have.  But it will be just very 08:10AM

```
 1    neutral.  I mean I think that you won't mind me saying that    08:10AM
 2    Mr. Kapp has turned ill and that is unable to be here, and     08:10AM
 3    I'll say that I agree with that, I received word from his      08:10AM
 4    doctors and so I mean I could say that.  And then that -- then 08:10AM
 5    we'll talk just briefly about there has been -- now you are    08:10AM
 6    also representing -- you guys are representing Hansen          08:10AM
 7    Helicopters, that Mr. Perez will continue to represent         08:10AM
 8    Mr. Kapp.  Is there any other issue?  And Mr. -- what was his  08:10AM
 9    name that was here?  The witness?                             08:11AM
10            MS. M. MILLER:  Reed.                                  08:11AM
11            THE COURT:  Reed.  Right, right.  Is he doing          08:11AM
12    okay?  He's okay, right?                                       08:11AM
13            MS. M. MILLER:  Yes.                                   08:11AM
14            THE COURT:  He's sickly.  But he's okay?  He's         08:11AM
15    able to come back?                                             08:11AM
16            MR. LEON GUERRERO:  Yes, I've been in contact          08:11AM
17    with his attorney, Attorney Pete Perez, so he'll be here this  08:11AM
18    afternoon.                                                     08:11AM
19            THE COURT:  So I'll make sure we change the chair      08:11AM
20    for him because the big chair is just too big for him and too  08:11AM
21    heavy, so he needs a small chair and little more solid instead 08:11AM
22    of leathery.                                                   08:11AM
23            Are there any other issues that I need to tell         08:11AM
24    the jurors?  I'll tell -- I'll also remind the jurors that     08:11AM
25    we'll stay on track on the time.  And that we're going to go   08:11AM
```

1   -- I'll say we're going to go through Monday through Friday --     08:11AM
2   no, we may go Saturdays, but it depends on the time limits.       08:11AM
3   But as of right now, we streamlined it pretty much.  I don't      08:11AM
4   want to take away their Saturdays, to be honest with you.         08:11AM
5               MS. M. MILLER:  Right.  And, Your Honor, I mean       08:11AM
6   after this week, I think that will be very telling.  If           08:11AM
7   Mr. Reed is off the stand today and if there isn't recross, I     08:11AM
8   think we can work it out where we just finish on Friday,          08:12AM
9   especially if we're not eating into the jury's time with late    08:12AM
10  filed motions.                                                    08:12AM
11              THE COURT:  Well, you're not going to eat into        08:12AM
12  the jury's time, guaranteed.  I will tell you that.  If we        08:12AM
13  have to come in at 6 in the morning, we'll come.  I'll tell       08:12AM
14  you that now.  I mean it.  You guys know I mean it.  So, yes?     08:12AM
15              MR. MARTIN:  I don't remember how -- if we            08:12AM
16  advised the jury that Mr. Crowe had been severed or not, Your    08:12AM
17  Honor.                                                            08:12AM
18              MS. M. MILLER:  We did.                               08:12AM
19              MR. MARTIN:  And it's my recollection --              08:12AM
20              MS. M. MILLER:  You did.                              08:12AM
21              THE COURT:  Emily says I did.  Okay.                  08:12AM
22              MR. MARTIN:  That's --                                08:12AM
23              THE COURT:  Any other housekeeping matter we need    08:12AM
24  to take care of?                                                  08:12AM
25              MR. MARTIN:  No, Your Honor.                          08:12AM

1       THE COURT:  Okay.  Well, I will see all of you,          08:12AM

2   that will give me a chance to take care of my law month       08:12AM

3   activity.  I'll see you at 1:00.  Take care.                  08:12AM

4       MS. M. MILLER:  Yes, Your Honor.  Thank you.             08:12AM

5       THE COURT:  I'll make sure you get a copy of that         08:12AM

6   -- we're in recess.                                           08:12AM

7       (Recess taken at 8:13 a.m.)                              08:13AM

8                          * * *

9       -----------------------------------------------------

10              CERTIFICATE OF OFFICIAL REPORTER

11

12  CITY OF HAGATNA              )
                                 )  ss.
13  TERRITORY OF GUAM           )

14

15      I, Veronica F. Flores, Official Court Reporter for

16  the District Court of Guam, do hereby certify the foregoing

17  pages, 1 to 31, to be a true and correct transcript of the

18  proceedings held in the above-entitled matter, to the best of

19  my ability.

20      Dated this 19th day of May 2022.

21

22                          /s/Veronica F. Flores
                            Veronica F. Flores
23

24

25